ACCEPTED
13-15-00452-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/10/2015 2:49:53 PM
Dorian E. Ramirez
CLERK

## NO. 13-15-00452-CV

## IN THE THIRTEENTH COURT OF APPEALS
## CORPUS CHRISTI—EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS

12/10/2015 2:49:53 PM

DORIAN E. RAMIREZ
Clerk

SANDEEP PATEL,

*Appellant,*

v.

HARBOR HOSPICE OF BEAUMONT, L.P., HARBOR HOSPICE MANAGER, L.L.C., QAMAR ARFEEN, AND ARFEEN PROPERTIES, L.P.,

*Appellees.*

ON APPEAL FROM THE 172nd DISTRICT COURT,
JEFFERSON COUNTY, TEXAS, NO. E-192,576

## APPELLEES' BRIEF

Glen W. Morgan
State Bar No. 14438900
gmorgan@rmqlawfirm.com
John Werner
State Bar No. 00789720
jwerner@rmqlawfirm.com
Reaud, Morgan & Quinn
801 Laurel St.
Post Office Box 26005
Beaumont, Texas 77720
(409) 838-1000.
(409) 833-8236 Fax

David Gaultney
State Bar No. 07765300
davidgaultney@mehaffyweber.com
Elana Einhorn
State Bar No. 06502455
elanaeinhorn@mehaffyweber.com
MehaffyWeber, P.C.
823 Congress Avenue, Suite 200
Austin, Texas 78701
(512) 394-3840
(512) 394-3860 Fax

Brandy Wingate Voss
State Bar No. 24037046
brandy@appealsplus.com
Smith Law Group LLLP
820 E. Hackberry Ave.
McAllen, Texas 78503
(956) 683-6330
(956) 225-0406 Fax

ATTORNEYS FOR APPELLEES

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

*Appellant*:  Sandeep Patel

Represented by:

Chris Portner
State Bar No. 24007858
cportner@portnerbond.com
J. Trenton Bond
State Bar No. 00785707
tbond@portnerbond.com
Portner Bond, PLLC
1905 Calder Avenue
Beaumont, Texas 77701
Phone: (409) 838-4444
Fax: (409) 554-0240

Anthony Malley, III
State Bar No. 24041382
tony@mallaw.com
Malley Law Firm, PLLC
905 Orleans, Suite 110
Beaumont, Texas 77701
Phone: (409) 212-8888
Fax: (409) 212-8002

Jamie D. Matuska
State BarNo. 24051062
jamie@matuskalaw.com
Matuska Law Firm
2809 Highway 69 North
Nederland, Texas 77627
Phone: (409) 722-5600
Fax: (409) 727-1290

*Appellees*:  Harbor Hospice of Beaumont, L.P., Harbor Hospice Manager, L.L.C., Qamar Arfeen, and Arfeen Properties, L.P.

Represented by:

David Gaultney
State Bar No. 07765300
davidgaultney@mehaffyweber.com
Elana Einhorn
State Bar No. 06502455
elanaeinhorn@mehaffyweber.com
MehaffyWeber, P.C.
823 Congress Avenue, Suite 200
Austin, Texas 78701
Phone: (512) 394-3840
Fax: (512) 394-3860

Jeremy Stone
State Bar No. 24013577
jeremystone@mehaffyweber.com
MehaffyWeber, P.C.
500 Dallas, Suite 1200
Houston, Texas 77002
Phone: (713) 655-1200
Fax: (713) 655-0222

Glen W. Morgan
State Bar No. 14438900
gmorgan@rmqlawfirm.com
John Werner
State Bar No. 00789720
jwerner@rmqlawfirm.com
Reaud, Morgan & Quinn
801 Laurel St.
Post Office Box 26005
Beaumont, Texas 77720-6005
Phone: (409) 838-1000
Fax: (409)833-8236

David E. Bernsen
State Bar No. 02217500
dbernsen@bernsenlaw.com
Christine L. Stetson
State Bar No. 00785047
cstetson@bernsenlaw.com
420 North MLK, Jr. Pkwy
Beaumont, Texas 77701
Phone: (409) 212-9994
Fax: (409)212-9411

Brandy Wingate Voss
State Bar No. 24037046
brandy@appealsplus.com
Smith Law Group LLLP
820 E. Hackberry Ave.
McAllen, Texas 78503
Phone: (956) 683-6330
Fax: (956) 225-0406

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................... ii

Table of Contents ..................................................................................... iv

Index of Authorities ................................................................................. vi

Statement of the Case................................................................................x

Request for Oral Argument........................................................................ xi

Issues Presented ..................................................................................... xii

Statement of Facts ....................................................................................1

Summary of the Argument..........................................................................5

Argument..................................................................................................6

    I.      All of Patel's claims are barred by limitations.......................................6

        A.     Patel's claims accrued by March 10, 2008. ................................6

        B.     Neither the discovery rule nor fraudulent concealment delays accrual or tolls limitations here..........................................................9

            1.     The discovery rule does not apply because the alleged injury was not of the limited type that is inherently undiscoverable. ..............................................9

            2.     The fraudulent concealment doctrine does not apply because the Partnership did not try to conceal termination of Patel's interests and Patel had notice of facts giving rise to his claims by March 2008................................13

            3.     The presence of fiduciary duties does not relieve Patel of his own obligation of diligent inquiry. ..........................................14

4. The same statute of limitations applies to Patel's declaratory-judgment claim as to his substantive claims...............15

II. Defendants conclusively negated at least one element of each of Patel's claims. .......................................17

A. Patel has no breach-of-fiduciary-duty claim...........................17

B. There is no genuine issue of material fact as to breach of contract...............................21

C. There is no genuine issue of material fact as to conversion and theft.............................23

III. There is no fact question as to damages..............................24

IV. The summary judgment evidence was properly considered by the trial court. ...........................26

Prayer ..........................................................................28

Certificate of Compliance ...................................................30

Certificate of Service ........................................................31

Index to Appendix.............................................................32

# INDEX OF AUTHORITIES

**Cases**

*Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.,*
   287 S.W.3d 877 (Tex. App.—Dallas 2009, no pet.) ...................................23

*B&W Supply, Inc. v. Beckman,*
   305 S.W.3d 10 (Tex. App.—Houston [1st Dist.] 2008, pet.
   denied) ........................................................................................................21

*Bandy v. First State Bank,*
   835 S.W.2d 609 (Tex. 1992) ......................................................................24

*Bohatch v. Butler & Binion,*
   977 S.W.2d 543 (Tex. 1996) ................................................ 14, 17, 18, 19, 20

*Bokor v. State,*
   114 S.W.3d 558 (Tex. App.—Fort Worth 2002, no pet.) ............................24

*Brosseau v. Ranzau,*
   81 S.W.3d 384 (Tex. App.—Beaumont 2002, pet. denied) ..........................19

*City of Houston v. Clear Creek Basin Auth.,*
   589 S.W.2d 671 (Tex. 1979) ......................................................................28

*Computer Assocs. Int'l., Inc., v. Altai, Inc.,*
   918 S.W.2d 453 (Tex. 1994) ........................................................................9

*Cosgrove v. Cade,*
   468 S.W.3d 32 (Tex. 2015) ........................................................................14

*Cotton v Cotton,*
   169 S.W.3d 824 (Tex. App.—Dallas 2005, pet. denied) .............................27

*Douglas v. Aztec Petroleum Corp.,*
   695 S.W.2d 312 (Tex. App.—Tyler 1985, no writ) .....................................17

*Exxon Corp. v. Emerald Oil & Gas Co. L.C.,*
   348 S.W.3d 194 (Tex. 2011) ........................................................................7

*Graham Mortg. Corp. v. Hall,*
   307 S.W.3d 472 (Tex. App.—Dallas 2010, no pet.) ....................................17

*Green Int'l v. Solis,*
951 S.W.2d 384 (Tex. 1997) .........................................................................23

*Guidry v. Wells*, No.
09-05-00182-CV, 2006 WL 246493 (Tex. App.—Beaumont
2006, no pet.) (mem. op.) ..............................................................................27

*Hooks v. Samson Lone Star, Ltd. P'Ship,*
457 S.W.3d 52 (Tex. 2015) ..................................................................... 13, 14

*In re Estate of Denman,*
362 S.W.3d 134 (Tex. App.—San Antonio 2011, pet. denied) ....................16

*J.M. Davidson, Inc. v. Webster,*
128 S.W.3d 223 (Tex. 2003) .........................................................................12

*LG Ins. Mgmt. Servs., LP v. Leick,*
378 S.W.3d 632 (Tex. App.—Dallas 2012, pet. denied) .............................18

*Luna v. Runyon,*
No. 03-06-00615-CV, 2008 WL 2609171 (Tex. App.—Austin
2008, pet. denied) (mem. op.)..........................................................................9

*McConathy v. McConathy,*
869 S.W.2d 341 (Tex. 1994) .........................................................................26

*Merriman v. XTO Energy, Inc.,*
407 S.W.3d 244 (Tex. 2013) ...........................................................................6

*Mowbray v. Avery,*
76 S.W. 3d 663 (Tex. App.—Corpus Christi 2002, pet. denied) ..................27

*Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon,*
*P.C.,*
406 S.W.3d 186 (Tex. App.—Corpus Christi 2013, pet. denied) ...................6

*Neely v. Comm'n for Lawyer Discipline,*
302 S.W.3d 331 (Tex. App.—Houston [14th Dist.] 2009, pet.
denied) ......................................................................................................... 26, 28

*Pink v. Goodyear Tire & Rubber Co.,*
324 S.W.3d 290 (Tex. App.—Beaumont 2010, writ dism'd) .......................28

*Provident Life & Accident Ins. Co. v. Knott*,
128 S.W.3d 211 (Tex. 2003) ........................................................................7

*Royston, Rayzor, Vickery & Williams, LLP v. Lopez*,
467 S.W.3d 494 (Tex. 2015) ......................................................................12

*S.V. v. R.V.*,
933 S.W.2d 1 (Tex. 1996) .................................................................... 14, 15

*Schneider Nat'l Carriers, Inc. v. Bates*,
147 S.W.3d 264 (Tex. 2004) ........................................................................7

*Schrock v. City of Baytown*,
No. 01-13-00618, 2015 WL 1882190 (Tex. App.—Houston [1st
Dist.] April 23, 2015, no pet.) (mem. op.).......................................................15

*Sci. Spectrum, Inc. v. Martinez*,
941 S.W.2d 910 (Tex. 1997) ................................................................ 6, 17

*Shell Oil Co. v. Ross*,
356 S.W.3d 924 (Tex. 2011) ............................................................... 10, 12

*Strebel v. Wimberly*,
371 S.W.3d 267 (Tex. App.—Houston [1st Dist.] 2012, pet.
denied) .........................................................................................18

*Thomas v. Ray*,
889 S.W.2d 237 (Tex. 1994) .....................................................................8, 9

*Valdez v. Hollenbeck*,
465 S.W.3d 217 (Tex. 2015) ........................................................ 6, 7, 9, 13

*Via Net v. TIG Ins. Co.*,
211 S.W.3d 310 (Tex. 2006) (per curiam) ...................................................10

*Wagner & Brown, Ltd.*,
58 S.W.3d 732 (Tex. 2001) .......................................................................10

*Weaver v. Witt*,
561 S.W.2d 792 (Tex. 1977) .....................................................................13

**Statutes**

TEX. BUS. ORG. CODE ANN. § 152.002...................................................... 18, 21, 22

TEX. BUS. ORG. CODE ANN. § 152.206 ...................................................20

TEX. BUS. ORG. CODE ANN. § 153.003 ...................................................22

TEX. BUS. ORG. CODE ANN. § 153.105 ...................................................21

TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 .......................................16

TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 .......................................16

TEX. CIV. PRAC. & REM. CODE ANN. § 134.002 .....................................24

TEX. CIV. PRAC. & REM. CODE ANN. § 134.003 .....................................24

**Rules**

TEX. R. APP. P. 33.1.................................................................................28

TEX. R. CIV. P. 166a ....................................................................... 6, 26, 27, 28

# STATEMENT OF THE CASE

*Nature of the Case:*    Claims for breach of contract, breach of fiduciary duty, conversion, theft, and fraud arising out of partnership dispute.

*Trial Court:*    The Honorable Donald J. Floyd, 172nd District Court, Jefferson County.

*Trial Court's Disposition:*    Summary judgment granted in favor of Defendants on all claims. CR255.

# REQUEST FOR ORAL ARGUMENT

Appellees respectfully request the opportunity to present oral argument. Appellees believe oral argument will assist the Court in resolving the issues presented.

# ISSUES PRESENTED

The trial court properly granted summary judgment because:

I.     All of Patel's claims are barred by a statute of limitations.

II.    Defendants negated at least one element of each of Patel's claims.

III.   Patel did not sustain any damages.

IV.    The summary judgment evidence was properly before the court.

**STATEMENT OF FACTS**

Defendant Harbor Hospice of Beaumont, L.P. (the "Partnership") is a limited partnership formed in 2005 to build and operate a hospice in Beaumont, Texas. CR42-43. Defendant Harbor Hospice Managers, L.L.C., was the general partner. CR73. The limited partners included Defendant Arfeen Properties, L.P. (Defendant Dr. Qamar Arfeen was its general partner), and Plaintiff Sandeep Patel. CR74,79.

Patel, an engineer, did not contribute any money to the Partnership; instead he was granted a 3% ownership interest in exchange for overseeing construction of the hospice. CR92-93,110-11.[1] Midway through construction, however, Patel demanded that his interest in the Partnership be doubled, and he threatened to walk off the job if his demand was not met. CR 107,116. Given the circumstances, the Partnership reluctantly agreed to his demand. *Id.*

Because of faulty construction and use of subcontractors who were not specialized in building medical facilities, the hospice did not pass state inspection. CR 110-12,114-15. Patel then promptly disappeared. CR105-07. This forced the Partnership to obtain substitute contractors at additional expense. CR107,118-19. Patel never responded to the Defendants' numerous attempts to contact him.

---

[1] The parties attached color-highlighted deposition testimony as exhibits to the motion for summary judgment and response. As it appears in the clerk's record, however, that highlighted testimony may be difficult to read. The parties therefore provided accurate color copies of that highlighted deposition testimony in their stipulation filed with this Court on November 24, 2015.

CR105,107. Dr. Arfeen testified that "before the facility was finished or could pass the Life Safety Code, he would not answer my calls." CR105. "He just totally disappeared from the scene." CR107.

Patel also failed to respond to requests for updated financial information from the bank financing the construction. Patel was a guarantor on the construction loan for the hospice, CR101-03, and the bank requested updated financial information as the loan approached maturity. App'x Tab A (CR121; Supp.CR102-06).[2]

Because Patel ignored the bank's requests, on March 4, 2008, the Partnership's general counsel sent a letter to Patel informing him that the bank was once again requesting updated financial information from him as the loan was about to mature. *Id.* The letter, sent by certified and regular mail, stated that the bank had tried several times to get the information from him, yet he had refused to provide the information or return phone calls. *Id.* The letter further told Patel that if he failed to provide the information to the bank by March 10, 2008, he would "be in material breach of [his] obligations under the partnership agreement . . . ." *Id.*

The letter then spelled out that the effect of this material breach would be termination of his partnership interest:

---

[2] As Patel notes, the second page of the letter can be found in the supplemental clerk's record. Supp.CR103. Patel testified about the second page of the letter at his deposition. CR95. The text is not in dispute. *See* the stipulation filed in this appeal on November 24, 2015.

> Please allow this letter to serve as notice that unless you remedy this breach and provide updated financials to the bank on or before March 10, 2008, the general partner shall terminate your interest in Harbor Hospice of Beaumont, L.P. and expel you for your continued breach of this written obligation. Please further note that if the general partner is forced to take action pursuant to Section 10.2 of the partnership agreement, you will forfeit to the partnership the entire value of your partnership interest upon your termination and expulsion.

*Id.* Patel's wife signed for the certified letter. CR94. The return receipt is dated March 29, 2008. CR134. Patel did not submit the required financials, CR106, and the Partnership was forced to refinance with another bank. CR117.

Because Patel failed to meet his commitments to the Partnership, his partnership interest was forfeited under section 10.2 of the Partnership Agreement. App'x Tab C (CR62); App'x Tab A (Supp.CR103). An amendment to the Partnership Agreement was executed to document the fact Patel was no longer a member of the Partnership effective January 1, 2008. CR126-29.[3]

Patel's 2008 IRS schedule K-1 accordingly showed his capital account and ownership interest as zero. App'x Tab B; CR96,141. Patel admitted that his 2008 tax return included the K-1 showing a zero equity interest in the Partnership. CR98.

---

[3] The amendment incorrectly states that Patel's limited partnership interests were redeemed rather than forfeited, but this mistake is immaterial because Patel had a negative balance in his capital account at the end of 2007, CR130-33, and under the Partnership Agreement, any redeemed interest would be equal to the redeemed partner's capital account. CR57-58. In other words, there was no value to the partnership interest in a redemption situation.

3

More than four years after the deadline set in the letter, Patel sued the Partnership, its general partner (Harbor Hospice Manager, L.L.C.), and two of its limited partners (Dr. Arfeen and Arfeen Properties, L.P.). His original petition, filed June 15, 2012, claimed breach of fiduciary duty, conversion, and fraud. CR5,7. He filed an amended petition on May 20, 2013, dropping the fraud claim but adding a breach-of-partnership-agreement claim. CR15,16. The Defendants moved for summary judgment on January 22, 2015. Supp.CR5. On February 26, 2015, Patel amended his petition again to reassert the fraud claim, add a claim under the Theft Liability Act, and add a request for declaratory judgment and specific performance. CR19,21,23.

A little less than a month later, the Defendants filed an amended motion for summary judgment demonstrating that: (1) statutes of limitations barred all claims; (2) there was no genuine issue of material fact as to at least one element of each of the substantive claims; and (3) Patel suffered no damages, a necessary element for each of his claims. CR26. The trial court granted summary judgment on all claims. CR255.

## SUMMARY OF THE ARGUMENT

The Partnership Agreement Patel signed authorized his involuntary termination, and allowed the general partner to reallocate his interest. Under the terms of the Agreement, Patel ratified and confirmed the general partner's actions. Patel admitted when he filed his tax return for 2008 that his partnership interest had terminated—he reported a zero ownership interest to the IRS.

Patel was notified that his interest would be terminated if he did not provide updated financial information to the bank by March 10, 2008. He did not do so, and his interest was terminated and reallocated. Those actions were not a breach of contract, fraud, breach of fiduciary duty, conversion, or theft. They were in fact what Patel agreed could happen.

Any claim that the contract was breached, or that the general partner should not have terminated his interest, should have been brought within four years after March 10, 2008—the deadline in the letter for him to avoid termination. Any claim for conversion or theft should have been brought within two years of that date. All of Patel's claims are barred by limitations. Neither the discovery rule nor fraudulent concealment delays accrual or tolls limitations in this case.

Furthermore, Patel suffered no damages. The Partnership Agreement provides that a limited partner who leaves the partnership leaves with nothing more than his capital account. The value of Patel's capital account was never a positive

amount while he was a partner, and so he was not entitled to any amount when he walked away from the partnership.

There are no genuine issues of material fact, and the Defendants were entitled to judgment as a matter of law. The trial court's summary judgment should be affirmed.

## ARGUMENT

Summary judgments are reviewed *de novo*. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). To be entitled to summary judgment, the movant must establish that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; *Nalle Plastics Family L.P.*, 406 S.W.3d at 199-200. A defendant can meet its summary-judgment burden by conclusively negating at least one element of each cause of action or conclusively establishing each element of an affirmative defense. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997). Defendants did both here.

## I.     All of Patel's claims are barred by limitations.

### A.     Patel's claims accrued by March 10, 2008.

Patel's claims all arise out of the termination of his partnership interest. The determination of when those claims accrued, and when the statute of limitations began to run, is a question of law. *See Valdez v. Hollenbeck,* 465 S.W.3d 217, 229

(Tex. 2015) ("When a cause of action accrues is typically a question of law."); *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 274-75 (Tex. 2004) ("Accrual of limitations is a question of law for the court."). To answer that question, the Court must decide when facts came into existence that authorized Patel to seek a judicial remedy. *See Exxon Corp. v. Emerald Oil & Gas Co. L.C.,* 348 S.W.3d 194, 202 (Tex. 2011); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). "In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Knott*, 128 S.W.3d at 221.

Patel's claims accrued on the March 10, 2008 deadline. In failing to supply updated financial information by that deadline, he forfeited his partnership interest. Patel was notified by letter of the deadline and that he would be expelled and his interest terminated. He was notified that he would "forfeit to the partnership the entire value of your partnership interest upon your termination and expulsion." App'x Tab A (Supp.CR103). On receipt of the letter, Patel was on actual notice of facts in existence that authorized him "to seek a judicial remedy." *See Knott*, 128 S.W.3d at 221.

Patel claims the letter was only a threat, but the letter was more than that. He received notice of the reason for the termination of his partnership interest and the deadline for his compliance. He knew from the letter that he had only until March

7

10, 2008, to act to avoid termination of his partnership interest. App'x Tab A (Supp.CR103). The Partnership plainly informed him that if he ignored the deadline his interest would be terminated. His interest was in fact terminated, and the termination was made effective as of January 1, 2008. But for purpose of the accrual of his causes of action, by March 10, 2008, facts had come into existence that permitted him to seek a judicial remedy.

The March 4, 2008 notice was mailed by regular mail and certified mail. CR121. When notice is sent to a proper address by regular mail there is a presumption of receipt that may only be overcome by sworn proof of non-receipt. *See Thomas v. Ray*, 889 S.W.2d 237, 238-39 (Tex. 1994). In *Thomas*, the Court explained:

> When a letter, properly addressed and postage prepaid, is mailed, there exists a presumption that the notice was duly received by the addressee. This presumption may be rebutted by an offer of proof of nonreceipt. In the absence of any proof to the contrary, the presumption has the force of a rule of law.

*Id.* at 238. (internal citations omitted). Moreover, section 13.2 of the Partnership Agreement provides that notice shall be deemed completed two days after it is deposited in the United States mail, first class, postage prepaid. CR67.

Patel testified that the letter was properly addressed to his residence and he confirmed his wife's signature on the certified letter. CR94. The fact that Patel did not personally sign the green card does not rebut the presumption or constitute

evidence of non-receipt. *See Luna v. Runyon,* No. 03-06-00615-CV, 2008 WL 2609171, at * 2 (Tex. App.—Austin 2008, pet. denied) (mem. op.). Patel neither denied receipt of the copy sent by regular mail nor offered proof of non-receipt. CR95-96. When he was asked if his wife brought the certified letter to his attention, he simply stated, "[s]he may have. I just don't recall." CR95. And he testified, "Well, I'm not telling you I didn't read it. I just don't recall." *Id.* Under the circumstances, the presumption that he received the notice "has the force of a rule of law." *See Thomas*, 889 S.W.2d at 238. His claims accrued and the statute of limitations began to run when he learned of facts giving rise to his right to seek a judicial remedy—by March 10, 2008.

**B.      Neither the discovery rule nor fraudulent concealment delays accrual or tolls limitations here.**

The Texas Supreme Court has recognized two limited doctrines that in appropriate circumstances may delay accrual or toll limitations: (1) the discovery rule, and (2) fraudulent concealment. *See Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Contrary to Patel's argument, neither doctrine applies here.

**1.      The discovery rule does not apply because the alleged injury was not of the limited type that is inherently undiscoverable.**

The discovery rule is a "very limited exception" to statutes of limitations that applies "in certain limited circumstances." *Computer Assocs. Int'l., Inc., v. Altai, Inc.*, 918 S.W.2d 453, 456-57 (Tex. 1994). When it applies, the doctrine

9

"defers the accrual of the cause of action until the injury was or could have reasonably been discovered." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929-30 (Tex. 2011). The Supreme Court has limited the discovery rule to "exceptional cases to avoid defeating the purposes behind the limitations statutes." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam).

The discovery rule applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd.*, 58 S.W.3d 732, 734 (Tex. 2001). The legal question of whether an injury is inherently undiscoverable "is decided on a categorical rather than a case-specific basis; the focus is on whether a *type* of injury rather that a *particular* injury was discoverable." *Via Net*, 211 S.W.3d at 314. A type of injury is inherently undiscoverable only if it is by its nature unlikely to be discovered within the statute of limitations despite due diligence. *Id.* at 313.

The loss of an interest in a partnership is not the type or category of injury that can be described as inherently undiscoverable. The Texas Supreme Court has explained that breach-of-contract cases to which the discovery rule would apply "should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims." *Id.* at 315. The exercise of due diligence in this case in responding to the letter would have provided Patel any information he did not already know. The

loss of a partnership interest is not the type or category of injury that is unlikely to be discovered despite due diligence. Indeed, Patel's 2008 IRS schedule K-1 and his non-receipt of K-1 schedules in the subsequent years made the injury not merely discoverable, but obvious.

Patel cites section 13.4 of the Partnership Agreement as requiring his signature on the termination to make it effective. App'x Tab C (CR68).[4] And he cites section 3.4 to the same effect. *Id.* (CR45).[5] But his termination was involuntary, not voluntary. Section 13.4 begins with the words "Except as otherwise expressly provided in this Agreement...." *Id.* (CR68). Section 10.2 expressly provides for the expulsion of a limited partner and the involuntary termination of his interest by the general partner. *Id.* (CR62). And Section 3.4 applies only to "agreed" changes, not involuntary termination. *Id.* (CR45).

Section 12.1 expressly provides that each limited partner "authorizes" and "ratifies and confirms" the actions of the general partner in, among other things, executing "[a]ll instruments and documents necessary to effectuate or act upon any reallocation of a defaulting partner's partnership interest." *Id.* (CR66). The contract does not require Patel's consent in writing to an involuntary termination. He knew

---

[4] Section 13.4 provides in part: "Except as otherwise expressly provided in this Agreement, no modification, waiver or termination of this Agreement, or any part hereof, shall be effective unless made in writing signed by the party or parties sought to be bound thereby...."

[5] Section 3.4 provides that "Any changes, additions or deletions to the list of GPs or LPs or their partnership interests made and agreed upon hereafter from that listed on Exhibit 'A' shall be recorded on Exhibit 'C' and initialed by all GPs and any LPs whose PI has so changed."

that when he signed the Partnership Agreement. *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015) ("[A]bsent fraud, misrepresentation, or deceit, one who signs a contract is deemed to know and understand its contents and is bound by its terms."). He also knew that when he received the termination letter. Requiring a partner's consent in writing for an involuntary termination to be effective would render the section authorizing involuntary termination meaningless. In construing a written contract, a court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

Furthermore, even when applicable, the discovery rule only tolls accrual "until the injury was or could have reasonably been discovered." *Shell Oil Co.*, 356 S.W.3d at 929-30. The "injury was or could have reasonably been discovered" by the March 10, 2008 deadline. Patel discovered or could have reasonably discovered then that he failed to meet the deadline, and knew or could have reasonably discovered the forfeiture of his partnership interest.

Patel also claims that somehow his interest may not yet have been terminated. This argument ignores not only the terms of the Agreement but his own 2008 tax return showing he no longer owned an interest in the Partnership. App'x Tab B (CR141). The contract authorized the general partner to reallocate his

interest, and the Partnership Agreement was amended as permitted by the Agreement. Nothing about this type of alleged injury brings it within the narrow orbit of the discovery rule.

> **2. The fraudulent concealment doctrine does not apply because the Partnership did not try to conceal termination of Patel's interests and Patel had notice of facts giving rise to his claims by March 2008.**

The fraudulent concealment doctrine also does not apply. Fraudulent concealment tolls limitations until fraud is discovered or should have been discovered with reasonable diligence. *Valdez,* 465 S.W.3d at 229. It is an affirmative defense to the statute of limitations under which the plaintiff has the burden of proof. *See Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex. 1977).

Defendants did not try to conceal the termination of Patel's interest in the Partnership. To the contrary, they actually advised him of the occurrence of forfeiture in the March 4th letter. App'x Tab A (Supp.CR102-06). Patel testified that he had no reason to believe that the Partnership did not terminate his interest as provided in the letter. CR96. He filed a K-1 with his tax return showing zero interest in the Partnership for 2008, and he did not receive any additional K-1 schedules in the following years. CR96-97.

The Texas Supreme Court has explained that, even in cases of alleged fraud, in some circumstances a court "can determine as a matter of law that reasonable diligence would have uncovered the wrong." *Hooks v. Samson Lone Star, Ltd.*

13

*P'Ship*, 457 S.W.3d 52, 58-59 (Tex. 2015); *see also Cosgrove v. Cade*, 468 S.W.3d 32, 38-39 (Tex. 2015). When there is actual or constructive notice, the accrual of a fraud claim is not delayed. *Cosgrove*, 468 S.W.3d at 38-39 (citing *Hooks*). By March 2008, Patel was aware that he was being expelled, yet he did not exercise any right to judicial relief until he filed suit more than four years later on June 15, 2012.

Nor can Patel create an issue based on the fact that Partnership Amendment 4 was executed twice. Both documents give the effective date of the termination as January 1, 2008. CR126, CR135. And in filing his 2008 tax return, he reported a zero interest in the Partnership for 2008. App'x Tab B (CR141).

### 3. The presence of fiduciary duties does not relieve Patel of his own obligation of diligent inquiry.

Patel is not entitled to special consideration due to any fiduciary duty owed to him as a limited partner. First, the Texas Supreme Court has explained that "partners have no obligation to remain partners." *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545 (Tex. 1996). "The fiduciary duty that partners owe one another does not encompass a duty to remain partners or else answer in tort damages." *Id.* at 546. And second, a fiduciary's misconduct is only inherently undiscoverable in situations when the person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so. *See S.V. v. R.V.,* 933 S.W.2d 1, 8 (Tex. 1996). As the Supreme Court has explained,

14

> [w]hile a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as that relationship exists, when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship.

*Id*. Defendants took affirmative steps to put Patel on notice of the impending expulsion from the Partnership. App'x Tab A (CR121;Supp.CR102-06). Patel simply chose to ignore his obligations. CR97. Patel was neither unable to inquire nor unaware of the need to do so. Neither the discovery rule nor the doctrine of fraudulent concealment applies.

### 4. The same statute of limitations applies to Patel's declaratory-judgment claim as to his substantive claims.

Finally, Patel argues that the trial court improperly disposed of his declaratory-judgment claim. But Defendants moved for summary judgment on all of his substantive claims, and it was properly granted on all of them. As the First Court of Appeals has stated, "because claims for declaratory relief necessarily derive from claims for substantive relief, the statute of limitations for the underlying action at law is applied to an accompanying action for declaratory relief." *Schrock v. City of Baytown*, No. 01-13-00618, 2015 WL 1882190, at *7 (Tex. App.—Houston [1st Dist.] April 23, 2015, no pet.) (mem. op.). Because all of Patel's underlying substantive claims were barred by limitations, the procedural device and remedy of a declaratory judgment was also properly dismissed. *See id.*;

15

*In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, pet. denied) ("Because a declaratory judgment action is a procedural device used to determine substantive rights, to determine the applicable limitations period, we must look to the legal remedy underlying the cause of action.").

Any alleged misconduct was not inherently undiscoverable. Patel was required to act. Since the termination occurred more than four years before he filed his original petition, Patel's claims for breach of partnership agreement, breach of fiduciary duty, and fraud are barred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5).

Patel had two years from accrual to file his claims for conversion and violation of the Texas Theft Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003. He was on notice in March 2008 of his expulsion from the Partnership, and admits that he received, sometime in 2009, the 2008 K-1 showing a zero interest in the partnership. CR96. He also admits that he included this K-1 in his 2008 tax return. CR96. Having waited to file suit until June 15, 2012, Patel's claims are time-barred, as any claim for an alleged conversion or theft accrued before June 15, 2010.

The trial court properly granted summary judgment on all claims based on the statute of limitations. The judgment should be affirmed.

16

**II.** **Defendants conclusively negated at least one element of each of Patel's claims.**

A defendant can meet its summary-judgment burden by conclusively negating at least one element of each of a plaintiff's claims. *See Sci. Spectrum*, 941 S.W.2d at 911. Defendants did that here with respect to each of Patel's claims, as to damages on the fraud claim and as to both damages and another element on all other claims.

**A.** **Patel has no breach-of-fiduciary-duty claim.**

Breach of fiduciary duty is a tort. *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 318 (Tex. App.—Tyler 1985, no writ). The elements for a breach-of-fiduciary-duty claim are: (1) plaintiff and defendant had a fiduciary relationship; (2) defendant breached this duty; (3) this breach resulted in harm to plaintiff or benefit to defendant. *See Graham Mortg. Corp. v. Hall,* 307 S.W.3d 472, 479 (Tex. App.—Dallas 2010, no pet.).

Harbor Hospice Managers, L.L.C., the general partner of Harbor Hospice of Beaumont, L.P., terminated Patel's limited partnership interest in the Partnership. Patel alleges this termination of his partnership interest was a breach of fiduciary duty. But the Supreme Court has already determined that, as a matter of law, "partners have no obligation to remain partners." *Bohatch*, 977 S.W.2d at 545. The fiduciary duty that partners owe each other "does not encompass a duty to remain

17

partners or else answer in tort damages." *Id.* at 546.[6] Defendants had no fiduciary duty to remain partners with Patel. *See LG Ins. Mgmt. Servs., LP v. Leick,* 378 S.W.3d 632, 643 (Tex. App.—Dallas 2012, pet. denied). As a matter of law, Patel has no breach-of-fiduciary-duty claim based on the termination of his partnership interest.

Furthermore, any action taken after termination of Patel's partnership interest, for example in transferring his former interest, cannot be a breach of fiduciary duty either. No fiduciary duty is owed to a former partner after the partnership interest is terminated. *See id.*

Even if a duty were owed, Defendants' actions were proper as a matter of law. Defendants' actions complied with the Partnership Agreement and the statutes governing partnership fiduciary obligations. *See* TEX. BUS. ORG. CODE ANN. § 152.002(a) (partnership statutes govern to the extent a partnership agreement does not otherwise provide).

A partner's fiduciary duty includes: (1) duty of loyalty to the joint concern; (2) duty of good faith, fairness, and honesty in dealings with each other on matters pertaining to the partnership; (3) duty of full disclosure of all matters; (4) accounting for partnership profits and property; and (5) refraining from competing

---

[6] Moreover, there is no claim that the limited partners terminated Patel's interest; limited partners generally do not owe any fiduciary duty to each other in this context. *See Strebel v. Wimberly*, 371 S.W.3d 267, 281 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). *But see LG Ins. Mgmt. Servs., LP v. Leick,* 378 S.W.3d 632, 643 n.8 (Tex. App.—Dallas 2012, pet. denied) ("Texas law is not clear whether limited partners owe each other fiduciary duties.").

or dealing with the partnership in a manner adverse to the partnership. *See Bohatch*, 977 S.W.2d at 545; *Brosseau v. Ranzau*, 81 S.W.3d 384, 394-95 (Tex. App.—Beaumont 2002, pet. denied). The claimed actions of Defendants in terminating Patel's interest do not constitute a breach of any of these duties.

Patel cites various provisions of the Agreement that he claims required his consent to the termination and reallocation of his interest. But his termination was involuntary. Section 10.2 expressly provides for the expulsion of a limited partner and the involuntary termination of his interest by the general partner. App'x Tab C (CR62). Section 12.1 expressly provides that Patel "authorizes" and "ratifies and confirms" the actions of the general partner in, among other things, executing "[a]ll instruments and documents necessary to effectuate or act upon any reallocation of a defaulting partner's partnership interest." *Id.* (CR66). The Agreement does not require Patel's consent to an involuntary termination or to the reallocation of his interest as a defaulting partner. *Id.* (CR62,66). The Agreement he signed authorized his involuntary termination and in that Agreement he ratified and confirmed the reallocation of his interest. *Id.* (CR62,66). He knew that when he signed the Agreement and when he received the March 4th letter from the Partnership. App'x Tab B (CR121;Supp.CR102-06). He acknowledged that when he filed his tax return showing a zero partnership interest. CR96; App'x Tab B (CR141).

As the Supreme Court stated in *Bohatch*, partners may choose with whom they associate. *See Bohatch*, 977 S.W.2d at 545. Patel can point to no requirement in the Agreement or the law that barred Defendants from rejecting him as their partner. Once the decision was made to reject him, he was notified, and under the terms of the Agreement, he was not owed any money. Regardless of the language used in the resolution terminating his interest, the termination was not a breach of fiduciary duty. *See id.* at 546.

A partner is presumed to satisfy the duty of care if the partner acts on an informed basis and in good faith with a reasonable belief that it is acting in the partnership's interest. TEX. BUS. ORG. CODE ANN. § 152.206. Removing Patel from the Partnership was objectively in the best interest of the Partnership. Patel had shown himself to be unreliable by not finishing the construction properly and by failing to pay subcontractors on-time, if at all. CR105,110-11. He held the half-completed major construction project hostage for an increase in ownership. CR107,116. He proved to be detrimental to the Partnership yet again when he failed to respond to the bank's request for financial information. This forced the Partnership to have to refinance the loan with another bank. CR117. Considering that Patel put up no money for his interest, but was supposed to successfully complete the construction project (CR92-93,110), his failure to act and his cavalier

attitude towards his partnership commitments and responsibilities were not in the best interest of the Partnership.

A partnership has the right to rid itself of partners who do not live up to their obligations. To exercise that right cannot be a violation of a fiduciary duty. The trial court properly granted summary judgment on the fiduciary-duty claim.

**B.      There is no genuine issue of material fact as to breach of contract.**

To prevail on a breach-of-contract claim, a plaintiff must prove: (1) there is a valid, enforceable contract; (2) the plaintiff is a proper party to sue for breach of contract; (3) the plaintiff performed, tendered performance of, or was excused from performing its contractual obligations; (4) the defendant breached the contract; and (5) defendant's breach caused plaintiff injury. *See B&W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The trial court properly granted summary judgment on Patel's breach-of-contract claim because there is no question of fact with respect to any breach.

Under Texas Business Organizations Code section 153.105, rights of limited partners may only be created by: (1) the certificate of formation; (2) the partnership agreement; (3) other sections of that chapter; or (4) other limited partnership provisions. TEX. BUS. ORG. CODE ANN. § 153.105. Section 152.002(a) of the Code provides:

> Except as provided by Subsection (b)[not relevant here],
> a partnership agreement governs the relations of the

partners and between the partners and the partnership. To the extent that the partnership agreement does not otherwise provide, this chapter and the other partnership provisions govern the relationship of the partners and between the partners and the partnership.

*Id.* § 152.002(a); *see also id.* § 153.003. Therefore, unless the Partnership Agreement conflicts with a non-waivable provision of the law, the Agreement governs the permissible actions by members of the Partnership with relation to it and one another.

Section 10.2 of the Partnership Agreement allowed the general partner to terminate Patel's partnership interest and expel him from the Partnership:

> Expulsion. All of the general partners may unanimously terminate the interest of a limited partner and expel him… (c) for failing to meet any commitment to the partnership or manager in accordance with any written undertaking signed by such limited partner… [T]he expulsion and termination may, in the sole discretion of the general partners in order to compensate for any damages caused to the partnership, result in a forfeiture to the partnership of all or a portion of the value of the partnership interest of the expelled partner at the time of such expulsion or termination.

App'x Tab C (CR62).

No provision of the Texas Business Organizations Code prohibits partners from agreeing to expulsion provisions in a partnership agreement. Because Patel failed to meet his commitments to the Partnership, his interest was terminated and his partnership interest was forfeited under section 10.2 of the Partnership

Agreement. App'x Tab C (CR62); App'x Tab A (Supp.CR102-06). An amendment to the Partnership Agreement was executed to document the fact Patel was no longer a member of the Partnership effective January 1, 2008. CR126-29. Patel's 2008 K-1, which he admitted filing with the IRS, accordingly showed his capital account and ownership interest as zero. CR96,98, App'x Tab B (CR141).

The forfeiture of the value of Patel's partnership interest was "in the sole discretion" of the general partner. App'x Tab A (CR62). The Partnership had the right to expel him under section 10.2, and Patel cannot identify any provision of the Agreement that was breached. There is no genuine issue of material fact regarding Patel's claim of breach of the Partnership Agreement. The trial court properly granted summary judgment on the breach of contract claim.

### C. There is no genuine issue of material fact as to conversion and theft.

The trial court also properly granted a summary judgment on Patel's conversion and theft liability claims. The elements of conversion are: (1) the plaintiff owned, possessed, or had the right to immediate possession of property; (2) the property was personal property; (3) the defendant wrongfully exercised dominion or control over the property; and (4) the plaintiff suffered injury. *See Green Int'l v. Solis,* 951 S.W.2d 384, 391 (Tex. 1997); *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.,* 287 S.W.3d 877, 888-89 (Tex. App.—Dallas 2009, no pet.). The elements are similar under the Theft Liability Act. TEX. CIV. PRAC. &

REM. CODE ANN. §§ 134.002(2) ("'Theft' means unlawfully appropriating property or unlawfully obtaining services…."), 134.003.

Patel violated the Partnership Agreement and triggered the expulsion clause. Defendants had the right to take control of his partnership interest under section 10.2 of the Agreement. App'x Tab C (CR62). Furthermore, when ownership of property is subject to a legitimate claim under a contract, there is no theft. *See Bokor v. State*, 114 S.W.3d 558, 560 (Tex. App.—Fort Worth 2002, no pet.). Patel's expulsion and the reallocation of his partnership interest were authorized by the contract. *See, e.g.*, *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex. 1992) (no conversion when bank had right to offset deposits against customer's debts). There is no genuine issue of material fact as to whether expulsion was justified or authorized by the contract; therefore the termination of Patel's interest cannot constitute conversion or theft. The trial court properly granted summary judgment on these claims.

## III. There is no fact question as to damages.

Furthermore, there is no fact question as to whether Patel suffered any injury from any of Defendants' alleged actions. The Partnership Agreement governs the relationship of the parties. Once Patel signed the Agreement, he agreed to each of the following provisions:

- Section 4.2   Return of Capital.

  Except as otherwise expressly provided for elsewhere herein, no partners shall be entitled to a refund or return of any capital contributions nor to withdraw any part of his capital account nor to receive any distributions of any kind, including of profits, from the partnership, except upon termination of the partnership which shall mean a complete winding up of the partnership and following the filing of a certificate of cancellation. App'x Tab C (CR45-46).

- Section 8.1   General Limitations.

  No limited partner may sell, pledge, transfer, exchange, hypothecate, encumber, give, devise, assign or otherwise dispose of or allow to be attached ("transfer" or "assign") any portion of his partnership interest nor may he withdraw from the partnership without the prior written consent of all of the general partners, which decision shall be made at their sole discretion. *Id.* (CR53).

- Section 8.5   Redemption of Partnership Interest

  a.   The partnership interest of all limited partners are subject to redemption by the partnership at the election of the general partners. In the event the general partners make such an election, the general partners shall provide the limited partner whose partnership interest is to be redeemed (the "Redeemed Partner") with at least sixty (60) days' prior written notice of the redemption.

  b.   The purchase price of the Redeemed Partner's LPI shall equal the balance of the Redeemed Partner's capital account established under Section 5.1 hereof, determined as of the end of the calendar month immediately preceding the month in which the closing of the redemption transaction takes place. *Id.* (CR57-58).

- Section 10.2   Expulsion

  All of the general partners may unanimously terminate the interest of a limited partner and expel him (a) for interfering in the management of the partnership affairs or otherwise engaging in conduct which

could result in the partnership losing its tax status as a partnership, (b) if the conduct of a limited partner brings the partnership into disrepute, or (c) for failing to meet any commitment to the partnership or manger in accordance with any written undertaking signed by such limited partner, but the general partners shall be not be required to so terminate. In each of the foregoing events, the expulsion and termination may, in the sole discretion of the general partners in order to compensate for any damages caused to the partnership, result in a forfeiture to the partnership of all of a portion of the value of the partnership interest of the expelled partner at the time of such expulsion or termination. *Id.* (CR62).

Under these provisions, any partner who leaves the partnership, either voluntarily or through expulsion, leaves with nothing more than his capital account. Patel had a negative balance in his capital account. CR130-33. The value of Patel's capital account was never a positive amount during any time in which he was a partner. As a matter of law he suffered no injury.

## IV. The summary judgment evidence was properly considered by the trial court.

Patel claims for the first time on appeal that the summary judgment proof was not properly authenticated. The objection has no merit. *See* TEX. R. CIV. P. 166a(d). The summary judgment evidence in this case consists exclusively of deposition testimony and deposition exhibits. It was not necessary to authenticate them. *McConathy v. McConathy*, 869 S.W.2d 341, 341 (Tex. 1994); *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 344 n.14 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("Deposition transcripts and the exhibits discussed

in the deposition need no authentication and constitute proper summary judgment evidence.").

This Court and the Ninth Court of Appeals have applied Rule 166a(d) to discovery documents and concluded authentication was unnecessary. The Ninth Court ruled "[a]uthentication of discovery documents is unnecessary if the proponent complies with Rule 166a(d)." *Guidry v. Wells*, No. 09-05-00182-CV, 2006 WL 246493, at *1 (Tex. App.—Beaumont 2006, no pet.) (mem. op.) (holding that referring to requests for admission and attaching an unauthenticated copy satisfied Rule 166a(d)). Likewise, in *Mowbray v. Avery*, this Court explained that two exhibits "were discovery documents in the same case and so do not need to be authenticated to serve as summary judgment proof." 76 S.W. 3d 663, 689 n.44 (Tex. App.—Corpus Christi 2002, pet. denied).

Patel did not object in the trial court and does not argue in this Court that any of the summary judgment evidence is not subject to Rule 166a(d). *See Cotton v Cotton*, 169 S.W.3d 824, 829 (Tex. App.—Dallas 2005, pet. denied) ("To the extent the 'exhibits' are discovery products, Neel's argument is not well taken, and Neel makes no argument that the exhibits are not subject to rule 166a(d)."). He does not point to any one exhibit as objectionable; he globally objects to them all without mentioning Rule 166a(d). Yet he did not object to the summary judgment evidence in the trial court. He did not ask the trial court for a ruling on any

objection to the evidence. He has waived the objection. *See* TEX. R. APP. P. 33.1; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979); *Pink v. Goodyear Tire & Rubber Co.*, 324 S.W.3d 290, 301 (Tex. App.—Beaumont 2010, writ dism'd) ("Generally a party is required to obtain an express ruling on its objection to summary judgment evidence."); *Neely*, 302 S.W.3d at 344-45.

Patel's objection has no basis. The deposition excerpts and exhibits were properly considered by the trial court under Rule 166a(d), and any objection cannot be made for the first time on appeal.

## PRAYER

Appellees respectfully request that the summary judgment be affirmed.

Respectfully submitted,

MEHAFFYWEBER, P.C.

By: */s/ David Gaultney*
David Gaultney
State Bar No. 07765300
davidgaultney@mehaffyweber.com
Elana Einhorn
State Bar No. 06502455
elanaeinhorn@mehaffyweber.com
MehaffyWeber, P.C.
823 Congress Avenue, Suite 200
Austin, Texas 78701
Phone: (512) 394-3840
Fax: (512) 394-3860

Jeremy Stone
State Bar No. 24013577
jeremystone@mehaffyweber.com
MehaffyWeber, P.C.
500 Dallas, Suite 1200
Houston, Texas 77002
Phone: (713) 655-1200
Fax: (713) 655-0222

David E. Bernsen
State Bar No. 02217500
dbernsen@bernsenlaw.com
Christine L. Stetson
State Bar No. 00785047
cstetson@bernsenlaw.com
420 North MLK, Jr. Pkwy
Beaumont, Texas 77701
Phone: (409) 212-9994
Fax: (409) 212-9411

Glen W. Morgan
State Bar No. 14438900
gmorgan@rmqlawfirm.com
John Werner
State Bar No. 00789720
jwerner@rmqlawfirm.com
Reaud, Morgan & Quinn
801 Laurel St.
Post Office Box 26005
Beaumont, Texas 77720-6005
Phone: (409) 838-1000
Fax: (409) 833-8236

Brandy Wingate Voss
State Bar No. 24037046
brandy@appealsplus.com
Smith Law Group L.L.L.P.
820 E. Hackberry Ave.
McAllen, Texas 78503
Phone: (956) 683-6330

Fax: (956) 225-0406

Attorneys for Harbor Hospice of Beaumont, LP, Harbor Hospice Manager, L.L.C, Qamar Arfeen, and Arfeen Properties, L.P.

## CERTIFICATE OF COMPLIANCE

I certify that this Appellees' Brief complies with the length limits of Tex. R. App. P. 9.4(i). The Brief contains 6,837 words, not counting the contents excluded by Rule 9.4(i)(1).

*/s/ David Gaultney*

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document has been forwarded to the following counsel of record via electronic filing manager and e-mail on December 10, 2015.

Chris Portner
cportner@portnerbond.com
J. Trenton Bond
tbond@portnerbond.com
Portner Bond, P.L.L.C.
1905 Calder A venue
Beaumont, Texas 77701
(409) 838-4444 Telephone
(409) 554-0240 Facsimile

Jamie D. Matuska
jamie@matuskalaw.com
Matuska Law Firm
2809 Highway 69 North
Nederland, Texas 77627
(409) 722-5600 Telephone
(409) 727-1290 Facsimile

Anthony Malley, III
tony@mallaw.com
Malley Law Firm, P.L.L.C.
905 Orleans, Suite 110
Beaumont, Texas 77701
(409) 212-8888 Telephone
(409) 212-8002 Facsimile

ATTORNEYS FOR APPELLANT,
SANDEEP PATEL

*/s/ David Gaultney*

**No. 13-15-00452-CV**

IN THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI—EDINBURG, TEXAS

SANDEEP PATEL,
*Appellant,*

v.

HARBOR HOSPICE OF BEAUMONT, LP, HARBOR HOSPICE MANAGER, LLC, QAMAR
ARFEEN, AND ARFEEN PROPERTIES, L.P.,
*Appellees.*

ON APPEAL FROM THE 172nd DISTRICT COURT,
JEFFERSON COUNTY, TEXAS, NO. E-192,576

## INDEX TO APPENDIX

**Tab:**              **Description:**

A.              Letter from the Partnership to Patel
B.              Patel's 2008 IRS Schedule K-1
C.              Partnership Agreement

# Tab A

(Letter from the Partnership to Patel)

FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
1/22/2015 5:19:08 PM
JAMIE SMITH
DISTRICT CLERK
E-192576



Maggie Parker

General Counsel and
Director of Risk Management

Harbor Healthcare System, LP

3515 Fannin, Suite 107

Beaumont, TX 77701

409.813.2332 office

409.838.7598 fax

mparker@harborhcs.com

March 4, 2008

<u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED AND REGULAR U.S. MAIL</u>
Sandeep Patel
12802 Aspen Terrace
Cypress, TX 77433

Re:     Harbor Hospice of Beaumont, L.P.;
        Loan #330001985366 with Capital One, N.A.

Dear Mr. Patel,

I am writing as General Counsel for Harbor Healthcare System, L.P. and the Harbor Hospice affiliates, including but not limited to Harbor Hospice of Beaumont, L.P. As you know, the above referenced loan on which you are a Guarantor matures March 12, 2008. A copy of a letter from Capital One dated February 25, 2008 was received this morning and is enclosed for your review. A copy of the Commercial Guaranty signed by you on this loan is also enclosed for your reference, as well as the Notice of Final Agreement.

The bank has attempted on several occasions to obtain updated financials from you and you have refused to provide same. Further, you have failed to return several phone messages regarding this matter. If you do not provide updated financials to the bank on or before March 10, 2008, you will be in material breach of your obligations under the partnership agreement and the enclosed loan documents.

Pursuant to Section 10.2 of the Agreement of Limited Partnership for Harbor Hospice of Beaumont, L.P., "[a]ll of the general partners may unanimously terminate the interest of a limited partner and expel him . . . for failing to meet any commitment to the partnership or manager in accordance with any written undertaking signed by such limited partner . . . . [T]he expulsion and termination may, in the sole discretion of the general partners in order to compensate for any damages caused to the partnership, result in a forfeiture to the partnership of all or a portion of the value of the partnership interest of the expelled partner at the time of such expulsion or termination."



EXHIBIT NO. 29

S. Beard 4/8/14

EXHIBIT "F"

102
DEF000578

Please allow this letter to serve as notice that unless you remedy this breach and provide updated financials to the bank on or before March 10, 2008, the general partner shall terminate your interest in Harbor Hospice of Beaumont, L.P. and expel you for your continued breach of this written obligation. Please further note that if the general partner is forced to take action pursuant to Section 10.2 of the partnership agreement, you will forfeit to the partnership the entire value of your partnership interest upon your termination and expulsion.

Please give this matter your immediate attention. It is our hope that you will honor your obligations and resolve this situation accordingly. Please give me a call to discuss your intentions on or before the March 10, 2008 deadline.

Very truly yours,

Maggie Parker
MMP/mmp
Enc.



Capital One, N.A.
P. O. Box 3597
Baton Rouge, LA 70821
(225) 381-2000

Rocco V. Kuhn
Vice President

February 25, 2008


Harbor Hospice of Beaumont, L.P.
ATTN: Sandeep Patel, Member
2450 N. Major Drive
Beaumont, TX. 77713

RE: Loan #330001985366

Dear Mr. Patel:

The above referenced loan with Capital One, N.A. ("C.O.N.A.") matures March 12, 2008 and will become due and payable in full. Due to this loan's pending maturity, CONA hereby makes formal demand for the outstanding debt as follows:

| | |
|---|---|
| Principal | $493,708.32 |
| Interest (through March 12, 2008) | $3,373.67 |
| Total Amount Due | $497,081.99 |

Formal demand is hereby made for $497,081.99 to be paid on or before March 12, 2008. Should you fail to comply with CONA's formal demand for $497,081.99, it is CONA's intention to proceed with any legal action necessary to collect all sums due under your Promissory Note, including all allowable attorney's fees and court costs which CONA incurs in collecting the amounts owed under the said Note. Your remittance must be paid by cashier's check and mailed to the undersigned.

*Should any payments less than the total outstanding balance plus all accrued interest and fees be received from you, CONA will apply those payments to reduce your debt. However, CONA does not waive any of its rights and specifically reserves its rights to enforce the terms of your loan documents even if those payments are received and applied to your debt.*

DEF000580

February 25, 2008
Harbor Hospice of Beaumont, L.P.
ATTN: Sandeep Patel, Member
Page: 2


Should you have any questions concerning this matter, I can be reached at (225) 381-2214.

Sincerely,

Rocco V. Kuhn
Vice President

rvk/kwb

cc: File

**Capital**One®

Capital One, N.A.
P.O. Box 3597
Baton Rouge, LA 70821

ADDRESS SERVICE REQUESTED



02 1A          $ 00.41⁰
0004334243    FEB 26 2008
MAILED FROM ZIP CODE 70802

Harbor Hospice of Beaumont, L.P.
ATTN: Sandeep Patel, Member
2450 N. Major Drive
Beaumont, TX

709 N7E 1 B071 25 02/26/08
FORM 9547
HARBOR HOSPICE OF BEAUMONT
PO BOX 29077
BEAUMONT TX 77720-3077

BC: 77720307777     *2793-00942-25-99

77719399 R013
7772003077

# Tab B
(Patel's 2008 IRS Schedule K)

7

651108

**Schedule K-1**
**(Form 1065)**

**2008**

For calendar year 2008, or tax
year beginning _____

Department of the Treasury
Internal Revenue Service

ending _____

**Partner's Share of Income, Deductions,
Credits, etc.**

▶ See separate instructions.

| [X] Final K-1 | [ ] Amended K-1 | OMB No. 1545-0099 |

**Part III** Partner's Share of Current Year Income,
Deductions, Credits, and Other Items

| | | |
|---|---|---|
| 1 Ordinary business income (loss) 0. | 15 Credits | |
| 2 Net rental real estate income (loss) | | |
| 3 Other net rental income (loss) | 16 Foreign transactions | |
| 4 Guaranteed payments | | |
| 5 Interest income | | |
| 6a Ordinary dividends | | |
| 6b Qualified dividends | 17 Alternative min tax (AMT) items | |
| 7 Royalties | | |
| 8 Net short-term capital gain (loss) | 18 Tax-exempt income and nondeductible expenses | |
| 9a Net long-term capital gain (loss) | | |
| 9b Collectibles (28%) gain (loss) | 19 Distributions A 28,575. | |
| 9c Unrecaptured sec 1250 gain | | |
| 10 Net section 1231 gain (loss) | 20 Other information | |
| 11 Other income (loss) | | |
| 12 Section 179 deduction | | |
| 13 Other deductions | | |
| 14 Self-employment earnings (loss) A 0. | | |

**Part I** Information About the Partnership

**A** Partnership's employer identification number
�In■■■■■■■■

**B** Partnership's name, address, city, state, and ZIP code

HARBOR HOSPICE OF BEAUMONT, L.P.
3515 FANNIN STREET, STE 107
BEAUMONT, TX 77701-3810

**C** IRS Center where partnership filed return
OGDEN, UT

**D** [ ] Check if this is a publicly traded partnership (PTP)

**Part II** Information About the Partner

**E** Partner's identifying number

■■■■■■■■■

**F** Partner's name, address, city, state, and ZIP code

SANDEEP PATEL
12802 ASPEN TERRACE
CYPRESS, TX 77433

**G** [ ] General partner or LLC member-manager      [X] Limited partner or other LLC member

**H** [X] Domestic partner      [ ] Foreign partner

**I** What type of entity is this partner? INDIVIDUAL

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 6.6035294% | 0.0000000% |
| Loss | 6.6035294% | 0.0000000% |
| Capital | 6.6035294% | 0.0000000% |

**K** Partner's share of liabilities at year end:

Nonrecourse .......................... $ _____
Qualified nonrecourse financing ...... $ _____
Recourse ............................. $ 0.

**L** Partner's capital account analysis:

Beginning capital account ............ $ <41,664.
Capital contributed during the year .. $ 70,239.
Current year increase (decrease) ..... $ 0.
Withdrawals & distributions .......... $( 28,575.)
Ending capital account ............... $ 0.

[X] Tax basis      [ ] GAAP      [ ] Section 704(b) book
[ ] Other (explain)

*See attached statement for additional information.

For IRS Use Only

Patel
EXHIBIT NO. 30
S. Beard 4/8/14

LHA  For Paperwork Reduction Act Notice, see instructions for Form 1065.

Schedule K-1 (Form 1065) 2008

811261
12-31-08

30

2008.03040 HARBOR HOSPICE OF BEAUMONT, 31200__1

7

141

DEF002164

EXHIBIT "K"

# Tab C
## (Partnership Agreement)

AGREEMENT OF LIMITED PARTNERSHIP
FOR HARBOR HOSPICE OF BEAUMONT, L.P.,
A TEXAS LIMITED PARTNERSHIP

This Agreement is made by and among each of the parties (all referred to as "partners") identified on Exhibit "A" as "general partners" and as "limited partners", effective on the 17 day of June, 2005 ("effective date"). In consideration of the covenants of each other, these "partners" agree to the formation of this limited partnership ("partnership") and to be bound by all of the following:

ARTICLE I

FORMATION; NAME AND OFFICE; PURPOSE

Section 1.1  Formation.

The partners hereby form this limited partnership pursuant to the provisions of the Texas Revised Limited Partnership Act ("Act").

Section 1.2  Name and Office.

The name, registered office, registered agent and principal office of the partnership are designated on the Certificate of Limited Partnership ("Certificate"), a copy of which is attached as Exhibit "B", or shall become such other name, agent or address as the general partner(s) shall hereafter agree upon and designate by notice to the limited partners and, where required, the Certificate filed with the Secretary of State of Texas ("SOS") shall be amended.

Section 1.3  Purpose and Activities.

The general purposes for which this partnership is organized are:

(a)  For the transaction of any or all lawful business;

(b) To enter into any lawful arrangements for sharing profits and losses in any transaction or transactions, and to promote and organize other entities;

(c)  To invest, buy, sell, lease or deal in any property (personal, intangible, real or mixed) or to render services;

(d)  To have and exercise all rights and powers that are now or may hereafter be granted to a limited partnership by law.

1

Patel

EXHIBIT NO. 1

S. Beard  4/8/14

Defendants p. 3

DEF00031542

EXHIBIT "A"

The foregoing shall be construed as objects, purposes, and powers and enumeration thereof shall not be held to limit or restrict in any manner the powers hereafter conferred on this partnership by the laws of the State of Texas.

The objects, purposes, and powers specified in this section shall not be limited or restricted by reference to or inference from the term of any other clause or paragraph "in this Agreement" ("herein"). The objects, purposes, and powers specified in each of the clauses or paragraphs herein shall be regarded as independent and cumulative objects, purposes or powers.

The specific activity in which the partnership intends to engage upon formation is to provide inpatient hospice care and services related or incidental thereto to individuals in need of such services.

Notwithstanding any provision in this Agreement to the contrary, if a physician owns, directly or indirectly, an LP or GP interest in the partnership, there shall be an absolute prohibition against the referral by that physician of that physician's patients to the partnership for the receipt of hospice services covered by Medicare, unless the hospice services are reimbursed under the hospice composite rate.

Section 1.4  Partnership Property.

The property owned by the partnership may be held in the name of the partnership or in the name of any general partner.

ARTICLE II

TERM

The term of the partnership shall commence on the effective date of this agreement and shall continue for ninety-nine (99) years, after which date the partnership shall dissolve, unless sooner dissolved in accordance with the Act or upon the occurrence of any of the following events of dissolution:

(a)  the voluntary bankruptcy of the partnership;

(b)  the termination and winding up of the partnership pursuant to other provisions contained elsewhere herein; or

(c)  the written agreement of all partners to dissolve the Partnership;

provided, however, that the sale or other disposition of all or

2

Defendants p. 4

DEF00031643

substantially all of the assets of the partnership or any time period of inactivity by the partnership shall not in and of itself dissolve or be grounds to dissolve the partnership.

## ARTICLE III

### INTEREST OF GENERAL AND LIMITED PARTNERS

Section 3.1    General Partner(s)

The initial General Partner (the "GP") is identified and its address is listed on Exhibit "A" under the caption "General Partner". The initial General Partner and each succeeding general partner, whether one or more, is referred to individually and collectively as general partner, general partners, GP, or GPs. Each GP shall have a "partnership interest" ("PI") (which term is defined in the Act) and shall be allocated profits and losses in the percentage set forth opposite its name under the column labeled "PI", subject to it being changed over time in accordance with the other provisions herein. The aggregate or sum of all partnership interests of all GPs is referred to as the "AGI" (aggregate general partnership interest). The general partnership interest of a GP is referred to as "GPI".

Section 3.2    Limited Partners.

There shall be three (3) classes of "limited partners" (collectively, the "LPs" and each, an "LP") as follows: Class A, Class B, and Class C. The initial Class A LPs and Class B LPs are identified on Exhibit "A" under the caption "Limited Partners". The Class C limited partnership interests shown on Exhibit "A" are initially reserved for future investors and shall be issued to such investors in the discretion of the GP.

Except as otherwise provided in this Agreement, each LP have a partnership interest and shall be allocated profits and losses in the percentage set forth opposite his, her or its respective name under the column labeled "PI", subject to it being changed over time in accordance with the other provisions herein. The aggregate or sum of all partnership interests of all LPs is referred to as the "ALI" (aggregate limited partnership interest). A LP PI is referred to as a "LPI".

3

Defendants p. 5

DEF000317

44

Section 3.3  Voting.

Each partner shall have the number of votes equal to the percentage of their respective PI (partnership interest(s)). The aggregate or sum of all AGI and ALI shall be "API" (aggregate partnership interest).There shall be no difference in voting rights among the different classes of LPI.

Section 3.4  Changes.

Any changes, additions or deletions to the list of GPs or LPs or their partnership interests made and agreed upon hereafter from that listed on Exhibit "A" shall be recorded on Exhibit "C" and initialed by all GPs and any LPs whose PI has so changed.

ARTICLE IV

CAPITAL CONTRIBUTIONS

Section 4.1  Capital Contributions.

Each partner shall make (if he has not already made the contribution of capital to the partnership) contributions of cash, services, property or obligations set forth opposite his or her name and initials on Exhibit "A" or "C" (if any shall be noted on "C").

Section 4.2  Return of Capital.

Except as otherwise expressly provided for elsewhere herein, no partner shall be entitled to a refund or return of any capital contributions nor to withdraw any part of his capital account nor to receive any distributions of any kind, including of profits, from the partnership, except upon termination of the partnership which shall mean a complete winding up of the partnership and following the filing of a certificate of cancellation. Such a termination or winding up does not include a dissolution which involves only a change in the relationship of the partners where the partnership continues (referred to in the Act and here as a "reconstitution"). Moreover, except as provided to the contrary herein or by the law, the general partner shall not be personally liable for the return of contributions of or additions to the capital of any limited partner, or any portion thereof, it being expressly understood that any such return shall be made solely from partnership assets. The GPs shall decide for each partner whether he may receive property or cash in exchange of all or part of his

4

Defendants p. 6

45
DEF000318

partnership interest if and when such exchange may be permitted by the other provisions herein.

Section 4.3   Loans.

The partnership shall be authorized to loan to and borrow money from any partner or other individual or entity ("person"). The amount of any loan made by or to a partner shall not be considered an increase or decrease in such partner's capital contribution or account or otherwise a contribution to the partnership nor shall the making of any such loan affect the profit and loss ratios. The general partner may, but shall not be obligated to, make loans to the partnership so that the partnership may pay its obligations timely. Obligations include debts for which the partnership has no personal liability but to which its property may be subject.

## ARTICLE V

## CAPITAL ACCOUNTS; INTEREST; WITHDRAWAL

Section 5.1   Capital Accounts.

A capital account shall be estimated for each partner and shall be maintained according to the Act and income tax accounting principles, including, for example, (a) increasing or crediting a partner's capital account with the amount of his capital contribution when made (b) crediting or reducing (debiting), as the case may be, a partner's capital account with such partner's allocated share of partnership profit or loss and (c) charging or debiting permitted distributions of capital to partners, other than any salary or guaranteed payments, against their respective capital accounts.

Section 5.2   Interest.

No interest shall be paid to any partner on the amount of his capital contribution or the amount in his capital account.

Section 5.3   Negative Balance.

If, after the net profit or the net loss of the partnership for the fiscal year has been determined and allocated, a general partner's capital account shows a deficit or negative balance, whether occasioned by permitted withdrawals or by charging him for his share of partnership loss, the deficit shall constitute an obligation of that partner to the partnership to be paid to the partnership upon its final termination and winding up. No limited partner shall be personally liable for any deficit amount in his capital account.

5

Defendants p. 7

DEF000319

46

Section 5.4  Additional Capital.

Additional capital may, from time to time, be contributed to the partnership by the partners in such amounts and proportions as shall be unanimously agreed upon by the partners. A description of such additional contributions shall be set forth on Exhibit "C" attached hereto and made a part hereof for all purposes, along with any change in partnership interests of the partners, which changes must be agreed upon unanimously.

Section 5.5  Distribution of Capital and Profits.

Distribution of any "amount in the capital account of a partner", including his share of profits ("capital"), may only be made as provided herein or as agreed upon from time to time by the GPs. The GPs may consider special circumstances of the partnership and of individual partners and may allow disproportionate or no distributions of capital among partners. Since one of the partnership goals is to earn profit by investing its assets, the GPs shall decide when, how much and to or by whom withdrawals or distribution of capital shall be made.

Notwithstanding any provision in this Agreement to the contrary, the following provisions shall be applicable:

(i) prior to the issuance of all of the Class C LPI, the portion of the profit or loss recognized by the partnership that is allocable to the unissued Class C LPI shall be reallocated to the Class A and Class B LPs and the GP on a pro-rata basis; and

(ii) when distributions of cash are made to partners, fifty percent (50%) of such distributions shall be allocated 15.625% to Class B and 84.375% to Class C LPs until $275,000.00 of the initial capital contributions made by Class B LPs and $1,485,000.00 of the initial capital contributions made by Class C LPs have been returned to such partners. Once the amounts of the initial capital contributions have been returned to the Class B and Class C LPs as described herein, distributions of cash shall be allocated to all partners according to their respective GPI or LPI.

Section 5.6  Adjustments of Capital Accounts.

In the event it is subsequently determined that the fair market value of an asset contributed by any partner was not, on the date of such contribution, set forth on any Exhibit or Schedule attached hereto, the capital account of the contributing partner shall be adjusted to reflect such determined fair market value.

6

Defendants p. 8

The provisions of this Agreement relating to the maintenance of capital accounts are intended to comply with Treasury Regulations Section 1.704-1(b), and shall be interpreted and applied in a manner consistent with such Regulations. In the event the GPs shall determine that it is prudent to modify the manner in which the capital accounts, or any debits or credits thereto (including, without limitation, debits or credits relating to liabilities which are secured by contributions or distributed property or which are assumed by the Partnership or GP), are computed in order to comply with such Regulations, the GPs may make such modification, provided that it is not likely to have a material effect on the amounts distributed to any partner upon the dissolution of the Partnership. The GPs also shall (i) make any adjustments that are necessary or appropriate to maintain equality between the capital accounts of the partners and the amount of partnership capital reflected on the partnership's balance sheet, as computed for book purposes, in accordance with Regulations Section 1.704-1(b)(2)(iv)(g), and (ii) make any appropriate modifications in the event unanticipated events (for example, the acquisition by the partnership of oil or gas properties) might otherwise cause this Agreement not to comply with Regulations Section 1.704-1(b).

## ARTICLE VI

### LIMITED PARTNERS

Section 6.1  Powers; Actions.

Except as otherwise expressly provided elsewhere herein, any actions taken, or to be taken (including but not limited to objections, approvals and consents) by the limited partners shall be duly and validly taken if approved, in writing, by LPs owning more than fifty percent (50%) of all ALI, unless another percentage is required by applicable law. The general partners shall notify the limited partners in writing whenever any such objection, consent or approval is required, and within ten (10) days after sending of such notice, each limited partner shall notify the general partners of his consent, approval or objection. Failure of any limited partner to so notify the general partners of an objections, disapproval or refusal of consent within such period shall be deemed to be consent, approval or waiver of objection by such limited partner, unless a specific response is required hereunder. All such actions by the limited partners shall be within their sole and absolute discretion except as otherwise expressly provided for elsewhere herein. The limited partners shall not participate in the management or control of the partnership's business nor shall they, as limited partners, transact any business for the partnership or have the power to sign

Defendants p. 9

DEF000321

48

for or bind the partnership, said powers being vested solely and exclusively in the general partners. All of the partners shall be entitled at all times to devote themselves to any other business, whether or not similar in nature to the business of the partnership, without offering any interest or participation therein to any of the other partners. All decisions to be made regarding this partnership shall be made by the general partners except where specifically required elsewhere herein or in the Act (as either may be amended from time to time).

Section 6.2  Limitation of Liability.

Subject only to the provisions of the Act and notwithstanding anything elsewhere provided herein to the contrary:

(a)  No limited partner shall be liable for any debts, liabilities or obligations of the partnership; and

(b)  No limited partner shall have to make any contributions of cash or other property, unless otherwise agreed to by such limited partner and evidenced in a writing signed by such limited partner. Any amounts loaned by any partner to the partnership and not repaid upon termination, winding up and liquidation of the partnership, shall be deemed to be in restoration of any deficit in such partner's capital account.

Section 6.3  Incapacity.

In the event that a limited partner cannot vote on partnership matters or otherwise becomes incapacitated, such limited partner's attorney in fact, if any, or legal guardian, if any, shall be entitled to cast his vote on any matter requiring a decision by limited partners. If no guardian or attorney in fact is appointed at a time when a vote of LPs is taken, the incapacitated limited partner's interest shall be disregarded for purposes of such a vote or decision.

ARTICLE VII

GENERAL PARTNER

Section 7.1  Powers; Action.

(a)  The general partners shall have the responsibility for the management, operation and control of the business and affairs of the partnership and each GP shall act as a "manager" of the partnership unless it is agreed by general partners owning at least 90% of the AGI that one or more general partners shall not act as a manager, in which case the partnership may employ one or more non-

8

Defendants p. 10

DEF000322 49

general partner managers to carry out or assist in carrying out such day-to-day management, operation and control (the "manager"). The general partners shall remain responsible to the partnership for the acts or omissions of the manager and for performance of their GPs' duties provided for herein or otherwise undertaken. The manager may be any person or entity.

(b) Without limiting the generality of subsection (a) above, the general partners shall have full power to (i) borrow money for any partnership purposes and to secure the repayment of such loan(s) by pledging partnership assets; (ii) cause the partnership to acquire assets; (iii) manage partnership assets (which term would include any investments and/or property); (iv) execute such other documents as it may deem advisable for partnership purposes; (v) operate, sell, maintain, insure and lease partnership assets; (vi) transfer, assign, convey, sublet, operate assets or construct additional assets or improvements thereon; (vii) pay all partnership expenses; (ix) perform or cause to be performed the partnership's obligations, and exercise or cause to be exercised all of the partnership's rights, under any agreement to which the partnership or any nominee of the partnership is a party; (x) loan funds to any partner, and (xi) admit additional limited partners into the partnership. The use hereafter of the term "manager" includes "GP managers" and other "managers" to the extent that such other managers are appointed. The manager may, on behalf of the partnership, employ, engage, retain or deal with any person to act in such other capacities as he may determine in his sole and complete discretion, including, without limitation, the hiring of any person to perform services in connection with the investment, operation, service, repair, leasing, advertising and/or sale of partnership assets, provided that in all such cases such services are deemed by the manager to be advisable and the compensation therefor is reasonable, and provided further that the general partners shall continue to be primarily responsible for the fulfillment of all of their obligations pursuant to this Agreement. The fact that a partner or manager is directly or indirectly connected with any person shall not prohibit them from employing or otherwise dealing with such person. Any such employment or dealing shall be done at reasonable rates for similar services, supplies or materials. The partnership shall reimburse the manager for all direct out-of-pocket expenses incurred on behalf of the partnership in accordance herewith.

(c) Subject to the provisions of Section 7.2 (a) herein, the manager shall have the power to execute and/or accept any instrument or agreement incident to the partnership's business and in furtherance of its purposes and any such instrument or agreement so executed or accepted as such shall be deemed executed and accepted on behalf of the partnership by the general partners.

9

Defendants p. 11

50
DEF000323

(d)   Except as otherwise expressly provided elsewhere herein, any actions taken, or to be taken (including but not limited to objections, approvals and consents) by the general partners shall be duly and validly taken if approved by general partners owning more than fifty percent (50%) of the AGI ("GP majority"), unless another percentage is required by applicable law.

Section 7.2   Restrictions.

(a)   Notwithstanding the provisions of Section 7.1 above, and except as elsewhere otherwise expressly provided herein or required by the Act without regard to the provisions of the Agreement, the general partners shall not, subject to the provisions of Section 7.2(b) below, do any of the following unless approved by limited partners owning more than fifty percent (50%) of the ALI:

(i)   any act for which consent of the limited partners is required by the Act;

(ii)   engage in any business activity other than that which is consistent with the purposes of the Partnership;

(iii) amend this Agreement except as provided for elsewhere herein; or

(iv)  permit any assignment or transfer of any portion of any partnership interest.

(b)   Notwithstanding anything expressly provided elsewhere herein to the contrary, the general partners shall not enter into any contract, loan, lease or other obligation that provides for the personal liability of any limited partner thereunder, except for loans of partnership funds to a limited partner.

(c)   The limited partners shall also have the right to remove any general partner if he is in material breach of his material obligations and does not cure, or commence and diligently prosecute the curing of, such material breach within ninety (90) days after notice thereof by any of the limited partners, or if he has committed any act or omission of fraud or malfeasance to the injury of the partnership, if such removal is agreed upon by limited partners owning more than fifty percent (50%) of all ALI.

In the event that a general partner is removed in accordance with these provisions (the "removed general partner"), then the removed general partner shall automatically become a limited partner and his partnership interest converted to a limited partnership interest. All partners, including the removed general partner, shall have the right to vote on the election of a

10

Defendants p. 12

DEF000354

substitute general partner if one is to be elected. A substitute general partner may be elected upon vote of partners owning more than fifty percent (50%) of the API.

## Section 7.3 Duties and Obligations of the General Partner.

(a) During the continuance of the partnership, the general partners shall diligently and faithfully devote such time to the management of the business of the partnership as may be necessary to serve the interests of the partnership and shall perform all of the duties of a general partner which are provided for herein.

(b) In the event that at any time there are more than one general partner, all obligations of the general partners under this Agreement shall be joint and several.

(c) The general partners shall have the authority to draw checks and drafts on the partnership bank accounts. The general partners shall be under no obligation to spend any of the assets of the limited partnership, but they may use or invest such portions thereof as they deem best for the interests of the partnership.

Section 7.4 Compensation.

Annually, the general partners may receive a reasonable fee for services rendered which is agreed upon by the GP majority, which payment (i) shall not exceed 20% of the net profits of the partnership for the year in question, and (ii) shall be in addition to any respective share of partnership profits paid to general partners. This compensation shall be reviewed periodically and adjusted by the general partners and shall be a guaranteed payment. If the cash flow of the partnership is insufficient to pay such salary, the unpaid portion of such salary may be deferred and bear interest.

Section 7.5 Liability; Indemnification.

The general partners shall be entitled to all indemnification authorized in the Act even if such indemnification is not specifically described elsewhere herein. The general partners shall have no obligation to loan, advance or contribute any amounts to the partnership (whether any deficit exists or otherwise) other than their obligation to pay their capital contribution provided for herein. Each general partner shall indemnify, save and hold harmless the partnership and each of the limited partners from any loss, damage, claim or liability incurred by them, including but not limited to reasonable attorneys' fees and expenses, due to or arising out of any breach of such general partner's obligations under this Agreement, negligence, fraud or bad faith. The

11

Defendants p. 13

partnership shall indemnify, save and hold harmless the manager from any loss, damage, claim or liability, including but not limited to direct and indirect costs and reasonable attorneys' fees and expenses, incurred by them by reason of any act performed by the manager on behalf of the partnership or in furtherance of the partnership's interest other than an act which is a breach of any obligation under this Agreement, negligence, fraud or bad faith; provided, however, that this indemnity from the partnership shall be satisfied out of partnership assets only. The partnership may purchase insurance to provide all or part of this indemnification.

Section 7.6 Banking.

All funds in the partnership shall be deposited in its name in such checking account or accounts as shall be designated by the general partners. All withdrawals therefrom shall be made upon checks signed by at least one (1) of the general partners or the manager, if he is authorized to so sign by the general partners.

Section 7.7 Relation.

Except where provided elsewhere herein or in the Act, a general partner shall have the rights and powers, and shall be subject to the restrictions and liabilities, of a partner in a partnership without limited partners.

Section 7.8 Personal Services.

By acting as a general partner or by signing this Agreement as a general partner, each general partner has made a personal services contract to perform each of the duties and obligations of a general partner that are specified herein and in the Act.

ARTICLE VIII

DISPOSITION OF LIMITED PARTNERS' INTERESTS

Section 8.1 General Limitation.

No limited partner may sell, pledge, transfer, exchange, hypothecate, encumber, give, devise, assign or otherwise dispose of or allow to be attached ("transfer" or "assign") any portion of his partnership interest nor may he withdraw from the partnership without the prior written consent of all of the general partners, which decision shall be made at their sole discretion. Such consent may not be given unless the general partners are satisfied that:

> (i) the transfer will not generate any unfavorable tax consequences, including impairing the ability of the

12

Defendants p. 14

DEF000326

53

partnership to be taxed as a partnership or to take advantage of accelerated depreciation or any similar concept enacted in the future under the federal income tax laws or, taken together with other transferred interests within the period of twelve (12) consecutive months prior to the proposed date of transfer, result in the termination of the partnership under Section 708 of the Internal Revenue Code of 1986, as amended (the "Code");

and, in addition, that the transferee:

(ii) represents that he is acquiring the transferred interest for his own account for investment and not with a view to the resale or other distribution thereof; and

(iii) agrees in writing to comply with and be bound by all of the provisions of this Agreement (as it may have been amended) and to execute any and all documents and furnish such other information or documents that the general partner(s) may deem necessary in connection with the transaction;

and, unless the transfer is to another existing partner, in addition to all of the foregoing, either (a) the transferee furnishes an opinion of counsel, which counsel and the form and substance of which opinion shall be satisfactory to the general partners, to the effect that registration of such transaction is not required under the Securities Act 1933, as amended, or any state securities act, or (b) such transfer is made pursuant to an effective registration statement under such laws. Any attempted assignment or withdrawal of or part of any partnership interest which is not permitted ("unpermitted") by the provisions in this Section 8.1 shall be automatically void and ineffective, except to the extent otherwise required by law.

Section 8.2 Right of First Refusal.

(a) A limited partner may sell his partnership interest only after he has (1) first offered it to the partnership pursuant to the provisions of this paragraph 8.2, and (2) obtained the prior written consent of the general partners as specified above.

(b) The selling limited partner shall give written notice to the partnership that he desires to sell his interest. He shall attach to that notice the written offer of a prospective purchaser to buy the interest. This offer shall be complete in all details of purchase price and terms of payment. The limited partner shall certify that the offer is genuine.

(c) For sixty (60) days from receipt of the written notice

13

Defendants p. 15

DEF000327

from the limited partner, the partnership shall have the option to redeem the interest of the limited partner at the price and on the terms contained in the offer submitted by the limited partner.

(d) For another sixty (60) days thereafter, the existing partners shall have the option to purchase the remaining interest of the limited partner at the price and on the terms contained in the offer submitted by the limited partner. If more than one partner wishes to make this purchase, then their rights shall be prorated between them based upon their respective partnership interests.

(e) If the partnership does not, and none of the partners exercise the option to acquire this interest, the selling limited partner shall be free to sell his partnership interest to the said prospective purchaser for the price, and on the terms contained in the certified offer submitted by the Limited Partner, if such sale has been approved in advance in writing by all of the general partners, and all other applicable conditions and provisions herein have been satisfied.

Section 8.3 Substituted Limited Partner.

No assignee or transferee of the whole or any portion of a partner's interest in this partnership shall have the right to become a substituted partner in place of his assignor unless all of the following conditions are satisfied:

(a) All of the other conditions and provisions herein regarding a transfer or assignment are satisfied;

(b) All of the general partners have consented in writing to the admission of the assignee as a substituted limited partner;

(c) A fully executed and acknowledged written instrument of assignment has been filed with the partnership which sets for the intention of the assignor that the assignee become a substitute limited partner.

(d) Unless waived in a writing signed by all general partners, the partnership interest being acquired by the assignee consists of one hundred percent (100%) of the assigning partner's interest.

(e) The assignor and assignee execute and acknowledge such other instruments as the general partners may deem necessary or desirable to effect such admission, including the written acceptance and adoption by the assignee of the provisions of the Agreement and the assignee's execution, acknowledgment and delivery

14

Defendants p. 16

DEF000328 55

to the general partners of a Power of Attorney, the form and content of which shall be provided by the general partner;

(f) A reasonable transfer fee, not exceeding Two Thousand Dollars ($2,000.00), has been paid by assignee to the limited partnership;

(g) The general partners will be required to amend the Agreement of Limited Partnership no more frequently than quarterly to reflect the permitted substitution of partners, and until such Agreement is so amended, an assignee shall not become a substituted partner;

(h) In the event any note or consent of any partners shall be taken or sought pursuant to this Agreement for any reason, an assignor or prospective assignor partner shall, solely for the purpose of determining the number of partnership interests held by him in weighting his vote, be deemed the holder of any partnership interests assigned by him in respect of which the assignee has not yet become a substituted partner;

(i) Subject to the other provisions herein, any limited partner may transfer at death or by way of gift any part of his interest in the Partnership; and

(j) Upon the withdrawal, death, bankruptcy or legal incompetency of a limited partner (and, in the case of a limited partner that is a corporation, association, partnership, joint venture or trust, the dissolution of such limited partner), the partnership shall not be dissolved but shall continue in existence without interruption, and in case of the death or legal incompetency of a limited partner, the executor, administrator, personal representative or guardian of such limited partner, if any, shall have the rights provided for in the Act.

Section 8.4    Other Assignees or Transferees; Transferor.

(a) Anything in this Agreement to the contrary notwithstanding, no person, including but not limited to any attempted or actual assignee of all or any part of any partnership interest, may become a substitute partner nor may such right to substitute be granted by a partner to any assignee, by operation of law or otherwise, without the prior written consent of all of the general partners, the granting of which shall be in their sole and uncontrolled discretion, and otherwise complying with the other provisions herein. Nor may any attempted assignee, except to the extent required by law, become an assignee or transferee of any portion of any partnership interest or partnership rights without the prior written unanimous consent of all general partners.

15

(b)   Except as otherwise expressly provided elsewhere herein, an attempted transferee who does not become a full substitute limited partner shall have no rights of a partner and shall have no right to vote or otherwise act as a partner under any of the provisions of this Agreement, including but not limited to the right to require any information or account of the partnership's transactions or to inspect the partnership's books, but at most shall only be allocated the share of the assigned interest of the partnership to the income, gain, loss, deduction, credit and distributions to which his assignor would otherwise be entitled. Except to the extent otherwise required by law, any such assignee (including but not limited to an intestate successor, a receiver, a trustee, legal representative, guardian or other successor in interest), who desires to make a further transfer of all or any part of his interest in the partnership shall be subject to all of the restrictive provisions herein to the same extent and in the same manner as any partner desiring to make an assignment of all or part of his interest in the partnership.

(c)   Any limited partner who properly assigns as permitted herein all of his interest in the partnership shall cease to be a limited partner of the partnership and shall no longer have any rights or privileges of a limited partner except that, unless and until the assignee of such limited partner is admitted as a substitute limited partner, said transferring limited partner shall retain the statutory rights and obligations of an assignor limited partner.

(d)   No partner (GP or LP) may withdraw and receive the fair value of his partnership interests as of the date of his withdrawal until the earlier of (a) the date that the partnership liquidates and winds up its affairs pursuant to Section 8.04 of the Act or (b) the date agreed upon by all general partners in the partnership (excluding, if applicable, the withdrawing partner), which agreement is memorialized in writing, signed by all such general partners and made at their sole discretion.

(e)   Except where otherwise required by applicable law, an assignee or attempted assignee of a partner shall not be entitled to receive distributions of the assignor or would-be assignor partner unless and until all general partners in the partnership (excluding the assignor if he were a general partner) have agreed to such assignment and to permit such distributions or withdrawals and evidence such agreement in writing, signed by all of them, made at their sole discretion.

Section 8.5   Redemption of Partnership Interest.

(a)   The partnership interests of all limited partners are subject to redemption by the partnership at the election of the

16

Defendants p. 18

DEF000330   57

general partners. In the event the general partners make such an election, the general partners shall provide the limited partner whose partnership interest is to be redeemed (the "Redeemed Partner") with at least sixty (60) days' prior written notice of the redemption.

(b) The purchase price of the Redeemed Partner's LPI shall equal the balance of the Redeemed Partner's capital account established under Section 5.1 hereof, determined as of the end of the calendar month immediately preceding the month in which the closing of the redemption transaction takes place.

## ARTICLE IX

### DISPOSITION OF GENERAL PARTNER'S INTEREST

Section 9.1 Voluntary Disposition or Encumbrance; Removal.

(a) No general partner may assign or transfer (i.e. sell, transfer, assign, exchange, dispose of, pledge, hypothecate, encumber or allow to be attached) all or any part of his interest in the partnership, or withdraw or resign as general partner, nor shall a new or substitute general partner be admitted to the partnership, without the prior written consent of all of the other partners (general partners and limited partners). Provided, however, a sole remaining general partner shall have the right to withdraw as a general partner only if he notifies the limited partners of his desire to admit a substitute general partner and the unanimous written consent of the limited partners to such admission is granted and the new general partner is admitted to the partnership prior to the time of the withdrawal of the prior general partner. Any attempted unpermitted assignment or transfer of all or part of any partnership interest shall be automatically void and ineffective, except to the extent otherwise required by law. Upon the granting of unanimous written consent of all of the partners, additional or substitute general partners may be designated with such share of the then existing transferring general partners' aggregate interest as the general partner(s) and designated additional or substitute general partners may agree upon. Without limitation to the generality of the foregoing, any general partner may, at any time without obtaining any prior written consent, convert all but one percent (1%) of his general partnership interest to a limited partnership interest. Any permitted assignee or transferee of a GP pursuant to all of the provisions herein shall become a general partner under this Agreement with all of the rights and subject to all of the obligations of a general partner under this Agreement. No substitution or change of general partners shall ever cause a termination, liquidation or winding up of this partnership, but instead the partnership shall continue uninterrupted and shall be

17

Defendants p. 19

DEF000331

58

reconstituted pursuant to the Act.

(b) Notwithstanding the other provisions herein and without limiting any other rights and remedies of any of the parties hereto arising from any breach by a general partner of the provisions of this Agreement, upon a breach of any of the provisions of Section 9.1(a) above by the general partner ("breaching general partner"), or upon any attempted unpermitted assignment, transfer or attachment of any part of a general partner partnership interest without the prior written consent signed by all other partners, the partner status and partnership interest of such breaching general partner or such status and interest of his assignee or creditor (if such assignment, transfer or attachment is ever permitted or is not void) shall automatically become a limited partner and limited partnership interest, unless a vote to accomplish this is required by law, in which case the percentage in interest of the limited partners required by law may elect to deem such general partner as having retired and ceased to be a general partner and his partnership interest shall thereupon become a limited partnership interest and the partnership shall continue uninterrupted and shall be reconstituted pursuant to the Act.

(c) Upon the written consent or affirmative vote of all limited partners, a general partner may be removed if, immediately prior to such removal, a successor general partner is elected by the limited partners owning ninety percent (90%) of the (then outstanding) ALI and becomes a substitute general partner or more than fifty percent (50%) of the ALI agree that no successor general partner shall be elected.

(d) Notwithstanding the provisions of Section 9.1(a), then the existing general partners may, at any time, upon their unanimous written consent, appoint a new general partner from the ranks of the then existing limited partners, if such appointee shall consent in writing to act as a general partner. The appointee may convert as much of his prior limited partnership interest to a general partnership interest as all of the partners shall agree, otherwise at least one percent (1%) of his prior partnership interest shall be so converted. The general partners may also, at any time, by their unanimous written consent, designate one or more persons who are limited partners to act as a general partner (subject to the provisions in the preceding sentence) on a standby basis and specify any order or conditions of such appointments, such designation to occur in a writing signed by all existing general partners and a copy mailed or delivered to each limited partner and one kept with the partnership's copy of this Agreement (which shall be considered an amendment for this conditional appointment purpose), but requiring no other formality or approval other than the written consent of the appointees to so act. For example, the general partners may decide to appoint one

18

Defendants p. 20

59

DEF000332

or more standby eligible partner(s) to serve in the event of the withdrawal of one or more existing general partner(s) or to appoint additional general partner(s) from those who are eligible, such appointment to occur at some specified future time or upon the happening of some condition. These examples are given by way of illustration only and not to limit the types of such eligible appointments.

(e) Unless they are (a) specifically contradicted by the provisions of Article IX, or (b) expressly applicable only to a limited partner, the provisions of Article VIII shall also apply to general partners.

Section 9.2 Death, Bankruptcy, Incompetence, Attachment and Incapacity.

(a) Upon the death, attempted unpermitted assignment or transfer or attachment of all or any part of his partnership interest, attempted attachment of all or any part of the outstanding stock of a corporation acting as a general partner, retirement, removal, resignation, withdrawal, dissolution, termination, bankruptcy or adjudication of incompetency of a general partner or his permanent incapacitation so that he is unable to perform his duties or upon his attempted withdrawal or resignation as general partner, he shall thereupon be deemed (except as provided differently elsewhere herein) to have retired as and ceased to be a general partner and his partnership interest shall thereupon be converted into an interest of a limited partner. For example, a ten percent (10%) PI as a GP shall become a ten percent (10%) PI as an LP.

(b) If, upon the occurrence of any event referred to in Section 9.2(a) or Section 14.1, there remains one or more other general partners, all such remaining general partners acting together shall have the right and duty to continue the business of the partnership.

If there exist such remaining general partners, or if none, any standby GPs exist, the partnership shall not liquidate, terminate and/or wind up, but shall continue its business and existence without interruption or other change in its reconstituted form with the remaining or new standby GPs who agree to act as a GP pursuant to the provisions of the Act.

(c) If, upon the occurrence of any event, including those referred to in Section 9.2(a) or Section 14.1, there is not a general partner, the partnership shall not be terminated, liquidated or wound up if, within a period of ninety (90) days after the occurrence of such event, the majority in interest of the limited partners elect to continue the business of the partnership

19

Defendants p. 21

DEF000333 60

in a reconstituted form and designate if necessary and for such purpose at least one new general partner who consents to and accepts such designation as of the date of such event and agrees to be bound by all of the obligations of a general partner under this Agreement. If the limited partners elect to continue the business of the partnership and designate one or more general partners pursuant to this Section, such election and designation shall not be deemed a termination of the partnership and the business of the partnership shall be continued uninterrupted using the partnership assets and name, in a reconstituted form, upon the same terms and conditions as are set forth in this Agreement, except for any agreed upon changes in percentage partnership interests of the parties and each partner hereby agrees to such continuation and/or reconstitution.

Section 9.3  Continuing·Obligation.

Nothing in Section 9.2(b) or in this Article IX shall be construed to relieve any general partner, or its successors, assigns, heirs or legal representatives from liability, if any, for any breaches or defaults incurred as a result of or in connection with, the termination, attempted assignment and/or conversion, as the case may be, of its partnership interest, or from any liability with respect to any claims arising from acts or omissions while he was a general partner, or from any of its obligations, whether or not theretofore incurred or accrued.

Section 9.4  Removal.

Except as provided elsewhere herein, removal of the sole general partner, which may occur only upon the written consent of all of the limited partners (except in cases of certain breaches by the general partners where the percentage vote of the limited partners to remove him may be ninety percent (90%) of the ALI), shall be effective only upon the selection of a successor general partner and such successor is admitted immediately prior to the time the removal is effective and the partnership shall continue its business and existence in its reconstituted form as provided for in the Act and such removal shall not be grounds to terminate, liquidate or wind up the partnership.

ARTICLE X

DURATION OF BUSINESS; DISSOLUTION; TERMINATION

Section 10.1  Duration.

The Limited Partnership shall continue for its full term as provided for in Article II herein unless it is terminated and wound up earlier as provided for below.

20

Section 10.2 Expulsion.

All of the general partners may unanimously terminate the interest of a limited partner and expel him (a) for interfering in the management of the partnership affairs or otherwise engaging in conduct which could result in the partnership losing its tax status as a partnership, (b) if the conduct of a limited partner brings the partnership into disrepute, or (c) for failing to meet any commitment to the partnership or manager in accordance with any written undertaking signed by such limited partner, but the general partners shall not be required to so terminate. In each of the foregoing events, the expulsion and termination may, in the sole discretion of the general partners in order to compensate for any damages caused to the partnership, result in a forfeiture to the partnership of all or a portion of the value of the partnership interest of the expelled partner at the time of such expulsion or termination.

Section 10.3 Dissolution.

The partnership shall be dissolved only when required by the Act.

Section 10.4 Reconstitution.

Upon any dissolution, the partners and partnership shall have all rights provided for in the Act or elsewhere in this Agreement to reconstitute the partnership and continue its business and existence without terminating, liquidating or winding up. The partners are authorized to do any and all acts contemplated or referred to in the Act relative to reconstitution. A single simple majority of API in interest of all partners may authorize such a reconstitution.

Section 10.5 Winding up the Partnership.

Only if the partnership is dissolved and is not reconstituted as provided for in the Act, shall the partnership commence to wind up its affairs, terminate or liquidate. In such case, the GPs shall sell all the partnership assets as promptly as is consistent with obtaining, insofar as possible, the fair value thereof, and after paying all liabilities, including all costs of dissolution, and subject to the right of the general partners to set up cash reserves to meet short-term partnership liabilities, other liabilities or obligations of the partnership, shall distribute the remainder to the partners pursuant to the relevant provisions of this Agreement and the Act. Except where otherwise required, such remaining distribution shall be first to pay off capital accounts ratably and the excess, if any, divided according to the

21

Defendants p. 23

DEF000335 62

percentages by which the partners share profits. The partners shall continue to share profits and losses during the period of liquidation in the same proportions as before dissolution.

Section 10.6  Gains or Losses in Process of Winding up and Liquidation.

Any gain or loss on disposition of partnership properties in winding up and liquidation shall be credited or charged to the partners in the proportion of their partnership interests (which are their interests in profits or losses as specified in Article III). Any property distributed in kind in liquidation shall be valued and treated as though the property were sold and the cash proceeds were distributed. The difference between the value of the property distributed in kind and its book value shall be treated as a gain or loss on sale of the property and shall be credited or charged to the partners in the proportions of their interests in profits and losses.

ARTICLE XI

ACCOUNTING FOR THE PARTNERSHIP

Section 11.1  Method of Accounting.

The Partnership shall keep its accounting records and shall report for income tax purposes on the cash basis. The records shall otherwise be maintained in accordance with generally accepted accounting principles.

Section 11.2  Annual Statement.

Financial statements shall be prepared not less than annually and copies of the statement shall be mailed to each partner. Copies of all income tax returns filed by the partnership shall be furnished to all partners and shall suffice as annual financial statements.

Section 11.3  Gain or Loss from Contributed Property.

Pursuant to Section 704(c) of the Code, income, gain, loss, and deduction with respect to property contributed to the partnership by a partner may be shared among the partners so as to take account of the variation between the basis of the property to the partnership and its fair market value at the time of contribution.

22

Defendants p. 24

DEF000336

63

Section 11.4  Tax Matters Partner.

The general partner with the largest interest in the partnership ("largest general partner") (after combining his general partner and limited partner interest, if any) or if there is no single largest general partner, the largest general partner whose last name would appear first in an alphabetically arranged list of last names of all general partners at the beginning of each year, shall be during such year and is hereby designated as the tax matters partner of the partnership pursuant to Section 6231(a)(7) of the Code ("Tax Partner" or "Tax P") for all returns filed for such year unless a replacement is designated and approved by more than fifty percent (50%) of the aggregate partnership interests owned by all partners or the Tax P gives notice of his intent to no longer be treated as Tax Partner. If, however, he gives notice of his intent to no longer be treated as Tax Partner as provided above, a Tax Partner shall be designated as provided by Section 6231(a)(7) of the Code. The Tax Partner shall keep all other partners informed of all administrative and judicial proceedings and any other matters which may come to the attention of the Tax Partner in its capacity as Tax Partner and which may, in the sole discretion of the Tax Partner, affect a partner's tax liability with respect to partnership tax items, by giving the other partners notice thereof within a reasonable time after the Tax Partner becomes informed of any such matter and in a reasonable manner consistent with the regulations promulgated under Section 6223(g) of the Code. The Tax Partner may take any action contemplated by Sections 6224 through 6232 of the Code if it has first given the other partners notice of the contemplated action and has not received within twenty (20) days after such notice is sent, notice of the disapproval of such contemplated action by partners owning in the aggregate at least fifty-one percent (51%) of the partnership aggregate interests owned by all partners. This provision is not intended to authorize the Tax Partner to take any action which is left to the determination of an individual partner under Sections 6222 through 6232 of the Code. The general partners shall insure that there is always a Tax Partner who is aware that he has such status and the GPs may, if a Tax Partner resigns such position, by majority vote of GPI, appoint a Tax Partner replacement.

Section 11.5  Annual Meeting to Review Financial Statements.

Not less than once a year, and as soon as possible after completion of the financial statements, a meeting shall be held for all general and limited partners to attend. The GPs shall review and discuss the financial statement at that meeting and report to the limited partners the financial condition of the partnership. All annual meetings shall be held at a place agreed upon by the general partners, or if not, then at the principal place of

23

Defendants p. 25

DEF000337 64

business of the partnership on or before the third Tuesday in April of each year and all partners shall receive prior notice of such meeting dates and places.

Section 11.6  Interim Financial Statements.

On written request, any limited partner shall be entitled to copies of any interim financial statements prepared for the partnership which exist.

ARTICLE XII

POWER OF ATTORNEY

Section 12.1  Power of Attorney.

The GPs shall from time to time elect one GP to act as attorney-in-fact (AIF). Without limiting the generality and effect of any other provisions herein appointing a general partner as attorney in fact for all the limited partners under this Agreement in connection with the doing of certain acts and the filing of certain papers, each limited partner hereunder hereby makes, constitutes and appoints, reserving full power of substitution and revocation, the general partner who is the AIF (or if none, the general partner with the largest partnership interest in this partnership or if more than one of them, the oldest), his true and lawful attorney in fact, empowered to act alone, and in the name, place and stead of each such limited partner, to make, execute, sign, acknowledge and swear to all instruments and file and record all documents requisite to carrying out the intention and purpose of this Agreement, including but not limited to the following:

(a)  All business certificates and necessary Certificates of Limited Partnership (if any) and amendments thereto from time to time as required by the Act or this Agreement;

(b)  All documents which may be required to effect the dissolution of the partnership which is permitted herein and any permitted cancellation of its Certificate of Limited Partnership, as amended from time to time;

(c)  All fictitious or assumed name certificates required or permitted to be file on behalf of the Partnership;

(d)  All such other instruments, documents and certificates which may from time to time be required by the laws of the State of Texas, the United States of America, or any other jurisdiction in which the partnership shall determine to do business, or any political subdivision or agency thereof, to effectuate, implement, continue and defend the valid and subsisting existence of the

24

Defendants p. 26

DEF000338

65

Partnership as a limited partnership;

(e) All instruments and documents necessary to effectuate or act upon any reallocation of a defaulting partner's partnership interest;

(f) To reflect any amendments duly made to the Agreement; and

(g) To reflect the admission to the partnership of any substituted partner or the withdrawal of any partner, in the manner prescribed in this Agreement.

All such powers of attorney shall survive the incompetency, incapacity, bankruptcy, retirement or withdrawal of any limited partner granting the same and the assignment by any such granting partner of the whole or any part of his interest hereunder.

Each limited partner authorizes the AFI to take any further action which such AFI shall consider necessary or advisable to be done regarding the foregoing as fully as such limited partner might or could do if personally present and hereby ratifies and confirms all that such AFI shall lawfully do or cause to be done by virtue hereof.

Section 12.2  Amendments.

(a) Each limited partner hereby authorizes and empowers the general partners to amend this Agreement from time to time by agreement of GPs owning at least ninety (90%) percent of the AGI, provided that without the prior written consent of all of the limited partners, no such amendment by the general partners shall:

(i) enlarge the rights or reduce the obligations or duties of the general partners;

(ii) affect the rights or restrictions regarding the assignability of partnership interests;

(iii) modify the term of the partnership or amend this Section 12.2;

(iv) reduce the rights or interests, or enlarge the obligations, of the limited partners; or

(v) add or delete any GP unless permitted by the other provisions herein.

(b) The general partner shall promptly notify the limited partners of any such amendments.

25

Defendants p. 27

DEF000339 66

(c)    Except where specifically provided elsewhere herein or by applicable law and except with respect to vested rights of the partners, this Partnership Agreement may be amended at any time by a vote of partners owning more than fifty percent (50%) of each of the AGI and ALI. A copy of any amendment signed by all partners voting in favor of such amendment shall be promptly mailed or delivered to each partner at his or her last known address.

## ARTICLE XIII

## GENERAL PROVISIONS

Section 13.1   Recipient of Distributions and Payments.

All distributions and payments of cash or property to be made pursuant to the provisions of this Agreement shall be made directly to the parties who are entitled hereto at their respective addresses indicated on Exhibits "A" and "C" or at such other address as shall have been set forth in a notice sent pursuant to the provisions of Section 13.2.

Section 13.2   Communications and Notice.

Except as otherwise expressly provided in this Agreement, any offer, acceptance, election, approval, consent, objection, certification, request, waiver, notice or other document required or permitted to be made or given pursuant to any provisions of this Agreement, shall be deemed duly made or given, as the case may be, if in writing, signed by or one behalf of the person making or giving the same, and shall be deemed completed when either personally delivered (with receipt acknowledged by the recipient) or two (2) days after deposited in the United States mail, first class, postage prepaid, addressed to the person or persons to whom such offer, acceptance, election, approval, consent, certification, required, waiver or notice is to be made or given at their respective addresses as indicated on Exhibit "A" and, in the case of the Partnership, at the office of the partnership specified in Exhibit "B" of this Agreement, or, in any case, at such other address as shall have been set forth in a notice sent pursuant to the provisions of this Section 13.2.

Section 13.3   Entire Agreement; Applicable Law; Effect.

This document contains the entire agreement by and among the parties and supersedes any prior understandings and agreements among them respecting the matters provided for herein.   This agreement shall be construed, enforced and governed in conformity with the laws of the State of Texas, without giving effect to

26

Defendants p. 28

DEF000340  67

principles of conflicts of law, and shall be binding upon the parties hereto, their successors, heirs, devisees, permitted assigns, legal representatives, executors and administrators but shall not be deemed for the benefit of creditors or any other person.

Section 13.4  Modification; Waiver or Termination.

Except as otherwise expressly provided in this Agreement, no modification, waiver or termination of this Agreement, or any part hereof, shall be effective unless made in writing signed by the party or parties sought to be bound thereby, and no failure to pursue or elect any remedy shall constitute a waiver of any default under or breach of any provision of this Agreement, nor shall any waiver of any default under or breach of any provision of this Agreement be deemed to be a waiver of any other subsequent similar or different default under or breach of such or any other provision of or any election or remedies available in connection therewith. Receipt by any party of any money or other consideration due under this Agreement, with or without knowledge of any breach or default, shall not constitute a waiver of such breach or default or of any provision of this Agreement.

Section 13.5 Counterparts.

This Agreement may be executed in one or more counterparts and, notwithstanding that all of the parties did not execute the same counterpart, each of the counterparts shall, for all purposes, be deemed to be an original so long as they all sign at least one copy or a signature page, and all of such counterparts shall constitute one and the same instrument binding on all of the parties hereto.  Limited partners may become parties to this Agreement by executing and delivering to the general partner a "signature page" hereto in form approved and signed by the general partner.

Section 13.6  Separability.

Each provision of this Agreement shall be considered separable and (a) if for any reason any provision (clause, word, sentence or portion of a sentence) or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portion of this Agreement which are valid, and (b) if for any reason any provision or provisions of this Agreement would subject the limited partners to any personal liability for the obligations of the partnership under the laws of the State of Texas or any other laws, as the same may now or hereafter exist, such provision or provisions shall be deemed void and of no effect.

27

Defendants p. 29

DEF000341  68

Section 13.7  Article and Section Headings.

Article and section titles or captions contained in this Agreement are inserted only as a matter of convenience and for reference, and shall not be construed in any way to define, limit, extend or describe the scope of any of the provisions hereof.

Section 13.8  Word Meanings.

The words such as "herein," "hereinafter," "hereof" and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.  The singular shall include the plural and vice versa. The masculine gender shall include the feminine and vice versa, unless the context otherwise requires.  "And" or "or" means "and/or".  Unless otherwise specified herein, words used herein which are defined in the Act shall have the same meaning as they have in the Act.

Section 13.9  Exhibits.

Exhibits "A", "B" and "C" are attached hereto, incorporated by this reference and their contents are made a part hereof.

Section 13.10  Survival of Covenants.

All covenants, representations, warranties and other written statements set forth in this Agreement shall survive execution and delivery hereof and making of the capital contributions provided for elsewhere herein.  All of the covenants, representations, warranties and statements shall be deemed to be independently material and to have been relied upon by the party or parties to whom made.

Section 13.11  Further Actions.

Each of the partners shall hereafter execute and deliver such further instruments and do such further acts and things as may be required or useful to carry out the intent and purpose of this Agreement and as are not inconsistent with the provisions hereof.

Section 13.12  Meetings.

Special Meetings of the partnership may be called by any general partners or limited partners holding more than ten percent (10%) of the limited partners' aggregate interests, for any matters for which the limited partners may vote, as set forth in this Agreement.  Upon receipt of a written request, either in person or by registered mail, stating the purpose of the meeting, the general

28

Defendants p. 30

DEF000342
69

partner shall provide all limited partners, within fifteen (15) days after receipt of said request, notice of a meeting and the purpose of such meeting to be held on a date not less than thirty (30) nor more than sixty (60) days after receipt of said request, at a time and place selected by the general partner.

The notice of meeting shall state the nature of the business to be transacted, and no other business shall be considered at the meeting. Limited partners may vote in person or by proxy at any meeting thereof, and the presence in person or by proxy of limited partners holding at least a majority of the limited partners' aggregate interests shall be necessary to constitute a quorum at such meeting. The general partner shall maintain a list of the names and addresses of, and the partnership interests owned by, the limited partners at the partnership's principal office. Such list shall be made available for the review of any limited partner or his representative at reasonable times, and upon request received by the general partner, the general partner shall furnish a copy of such list to any limited partner or his representative for the cost of reproduction and mailing.

Section 13.13 Confidentiality.

By execution hereof, each partner agrees to keep all information concerning the partnership confidential, including but not limited to the names and ownership interests of the partners. This restriction shall not apply to information which is already available to the general public.

ARTICLE XIV

INVESTMENT AND NOTICE PROVISIONS

Section 14.1 Notice to Limited Partners.

THE LIMITED PARTNERSHIP INTERESTS (THE "UNITS") OF HARBOR HOSPICE OF BEAUMONT, L.P. (THE "PARTNERSHIP") HAVE NOT BEEN REGISTERED, APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR BY THE SECURITIES ADMINISTRATOR OF ANY STATE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THERE IS NO PUBLIC MARKET FOR THE UNITS. IN MAKING AN INVESTMENT DECISION, YOU MUST RELY ON YOUR OWN EXAMINATION OF THE PARTNERSHIP AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED.

29

Defendants p. 31

DEF000343

70

THE UNITS ARE RESTRICTED SECURITIES, AND YOU MAY NOT TRANSFER OR RESELL THEM EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. THE SALE OR OTHER TRANSFER OF THE UNITS IS ALSO RESTRICTED BY ARTICLE VIII OF THE AGREEMENT OF LIMITED PARTNERSHIP OF THE PARTNERSHIP. YOU WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

Section 14.2  Risk Factors.

(a)  Business Risks.  The partnership will be a new business venture with no prior operating experience, subject to all of the risks that are attendant to any such venture.  The partnership does not anticipate engaging in any business except the activities described herein.  While the discussion herein seeks to summarize the foreseeable risks affecting the operations of the partnership, investors in the partnership should recognize the partnership, like any new business venture, is subject to a number of unforeseeable risks.

(b)  Failure of Assumptions Regarding Performance.  The actual revenues and expenses of the partnership will vary from those presented in financial forecasts and the variation may be material. Therefore, a prospective investor should evaluate carefully the reasonableness of the assumptions which underlie the financial forecasts.

(c)  Regulatory Risks.  Investors should be aware that there is increasing scrutiny by law enforcement authorities, the Office of Inspector General, Centers for Medicare and Medicaid, the courts, and Congress of arrangements between health care providers and potential referral sources to ensure that these arrangements are not designed as a mechanism to exchange remuneration for patient care referrals and opportunities.  These agencies have also demonstrated a willingness to look behind the formalities of a contractual relationship (such as a partnership or limited liability company) to determine the underlying purpose of payments between health care providers and potential referral sources.

The partnership believes that the partnership has been structured to comply with federal and state law because the Limited Partners will receive financial benefits solely on the basis of their equity interests in the partnership and the receipt of such benefits is not conditioned upon the Limited Partners' referral of patients to the Institute. No documents or agreements have been submitted to the OIG, CMS, or the United States Department of Justice for a determination of whether conditions for investor suitability, capital contributions to the partnership, or

30

Defendants p. 32

DEF000344 71

distributions to the Limited Partners, or any of the partnership's contractual arrangements constitute remuneration in consideration of referral or fee-splitting arrangements, kick-backs, commissions, bonuses, or rebates.

Section 14.3   Limited Partners' Representations and Warranties.

By execution hereof, each Limited Partner represents and warrants to the Partnership that:

(1)   The Limited Partner is either an "accredited investor" or is a "sophisticated and well-informed investor" (as defined in the Securities Act of 1933 or the Texas Securities Act, and the Limited Partner has the required financial sophistication, net worth, knowledge and experience in financial matters.

(2)   The information contained in the Execution Page of this Subscription Agreement is complete, accurate, and may be relied upon by the partnership and the General Partner.

(3)   The Limited Partner will notify the partnership and the General Partner immediately of any material adverse change in any of the information contained in the Execution Page occurring before acceptance of the Limited Partner's subscription.

(4)   The Limited Partner will provide any further necessary information as may be required by the partnership, the General Partner, or their counsel to verify the information contained in the Execution Page.

(5)   The Limited Partner is subscribing for investment purposes only and not for resale or distribution.

(6)   The Limited Partner has adequate means of providing for his, her or its current needs and personal contingencies, and does not anticipate that he, she or it will have a need to liquidate or transfer the Units.

(7)   The Limited Partner recognizes and acknowledges his, her or its understanding of the speculative nature and risk of loss associated with this type of investment and confirm that the Units subscribed for constitute an investment that is suitable and consistent with the Limited Partner's overall investment program and that the Limited Partner's financial situation enables the Limited

31

Defendants p. 33

DEF000345

Partner to bear the risks of this investment which may include the total loss of the subscription.

(8) In making the decision to purchase the Units, the Limited Partner has relied on independent investigations, including the Limited Partner's own professional tax and business advisors, and the Limited Partner has been given the opportunity to examine all relevant documents and to ask questions of, and to receive answers from, the General Partner concerning the terms and conditions of the offering.

(9) The Limited Partner shall not, directly or indirectly, own an interest in an entity or facility located within a 10-mile radius of any facility owned or operated by the Partnership that competes with or is substantially similar to the business of the Partnership.

Section 14.4  Spousal Joinder.

By execution hereof, each Limited Partner's spouse, if applicable, acknowledges that he or she has received and reviewed this Agreement of Limited Partnership and that he or she agrees to be bound by all of the terms and conditions hereof to the extent of such spouse's community property interest, if any, in the Units.

EXECUTED THIS 17, of June , 2005.

GENERAL PARTNER:

HARBOR HOSPICE MANAGERS, L.L.C.

By: _____
Its Manager

[EXECUTION PAGES OF LIMITED PARTNERS FOLLOW]

32

Defendants p. 34

DEF000346 73

<u>LIMITED PARTNER EXECUTION PAGE</u>

NAME OF LIMITED PARTNER: Arfeen Properties, L.P.

Signature of Limited Partner:

Qamar U. Arfeen, General Partner

Signature of Spouse (if applicable):

Not applicable

Date of Execution: 11/08/05

33

Defendants p. 35

74
DEF000347

LIMITED PARTNER EXECUTION PAGE

NAME OF LIMITED PARTNER: Texas Realms, Ltd.

Signature of Limited Partner:

By: Texas Teal, Inc., General Partner

By: _____
    Muhammad T. Aziz, President

Signature of Spouse (if applicable):

Not applicable.

_____

Date of Execution: ___11- 8 25___

34

Defendants p. 36

DEF000348 75

## LIMITED PARTNER EXECUTION PAGE

NAME OF LIMITED PARTNER: Aman Jafar

Signature of Limited Partner:

_____ Aman Jafar

Signature of Spouse (if applicable):

_____

Date of Execution: _11-09-05_

35

Defendants p. 37

DEF000349
76

# LIMITED PARTNER EXECUTION PAGE

NAME OF LIMITED PARTNER: Janet Montagne

Signature of Limited Partner:

_Janet Montagne_
Janet Montagne

Signature of Spouse (if applicable):

Date of Execution: _11-08-05_

36

Defendants p. 38

DEF000350

NAME OF LIMITED PARTNER: Joe Royall Chapman

Signature of Limited Partner:

_____

Joe Royall Chapman

Signature of Spouse (if applicable):

_____

Date of Execution: 11/18/05

37

LIMITED PARTNER EXECUTION PAGE

NAME OF LIMITED PARTNER: Sandeep Patel

Signature of Limited Partner:

_Sandeep Patel_

Signature of Spouse (if applicable):

_Naulea S Patel_

Date of Execution: 11/9/05

38

<u>LIMITED PARTNER EXECUTION PAGE</u>

NAME OF LIMITED PARTNER: Allen David Ayres

Signature of Limited Partner:

_____
Allen David Ayres

Signature of Spouse (if applicable):

_____

Date of Execution:  11-08-05

39

Defendants p. 41

DEF000353  80

LIMITED PARTNER EXECUTION PAGE

NAME OF LIMITED PARTNER: Triptesh Chaudhury

Signature of Limited Partner:

Triptesh Chaudhury

Signature of Spouse (if applicable):

Date of Execution: 11/8/05

40

Defendants p. 42

DEF000354 81

LIMITED PARTNER EXECUTION PAGE

NAME OF LIMITED PARTNER: Anwar Family Partners, Ltd.

Signature of Limited Partner:

By:  Imtiaz Managers, L.L.C., General Partner

By:_____
        Imtiaz Anwar, Manager

Signature of Spouse (if applicable):

Not applicable.
_____


Date of Execution: __11/9/05__

41

DEF000355  82

INITIALS LIMITED PARTNERS

| Name & Address | Contribution of Capital | Percentage & Interest LPI % to total PI |
|---|---|---|

Class A Limited Partners (cont'd):

Sandeep Patel
12802 Aspen Terrace
Cypress, TX 77433          $ 3,000.15          3.0000%

Allen David Ayres
2501 North Street
Beaumont, TX 77702         $ 3,000.15          3.0000%

Anwar Family Partners, Ltd.
3850 Champions Dr.
Beaumont, TX 77707         $ 7,832.84          7.8330%

Class B Limited Partners:

Arfeen Properties, L.P.
7683 Cobblestone Terrace
Lumberton, TX 77657        $ 50,004.00         4.1670%

Texas Realms, Ltd.
3840 Champions Dr.
Beaumont, TX 77707         $ 49,992.00         4.1660%

Aman Jafar
1323 Meadowlark Lane
Sugarland, TX 77478        $ 49,992.00         4.1660%

Triptesh Chaudhury
P.O. Box 2652
Port Arthur, TX 77643      $ 50,004.00         4.1670%

Defendants p. 44

DEF000356
83

EXHIBIT "A"

INITIALS GENERAL PARTNER

| Name & Address | Contribution of Capital | Percentage & Interest GPI % to total PI |
|---|---|---|
| Harbor Hospice Managers, L.L.C. 4010 College Street Suite 100 Beaumont, Texas 77707 | $1,000.00 | 1.00% |

INITIALS LIMITED PARTNERS

| Name & Address | Contribution of Capital | Percentage & Interest LPI % to total PI |
|---|---|---|

Class A Limited Partners:

| Name & Address | Contribution of Capital | Percentage & Interest |
|---|---|---|
| Arfeen Properties, L.P. 7683 Cobblestone Terrace Lumberton, TX 77657 | $23,499.70 | 23.5000% |
| Texas Realms, Ltd. 3840 Champions Dr. Beaumont, TX 77707 | $ 7,833.43 | 7.8335% |
| Aman Jafar 1323 Meadowlark Lane Sugarland, TX 77478 | $ 7,833.43 | 7.8335% |
| Janet Montagne 2230 Chasse Bend Orange, TX 77632 | $ 3,000.15 | 3.0000% |
| Joe Royall Chapman 7880 Lantana Beaumont, TX 77713 | $ 3,000.15 | 3.0000% |

NAME OF LIMITED PARTNER: Suleman Lalani

Signature of Limited Partner:

Suleman Lalani

Signature of Spouse (if applicable):

Date of Execution: 11/9/05

42

Defendants p. 46

DEF000385

EXHIBIT "A" CONTINUED

INITIALS LIMITED PARTNERS

| Name<br>& Address | Contribution<br>of Capital | Percentage<br>& Interest<br>LPI %<br>to total PI |
|---|---|---|
| Class B Limited Partners (cont'd): | | |
| Anwar Family Partners, Ltd.<br>3850 Champions Dr.<br>Beaumont, TX 77707 | $ 50,004.00 | 4.1670% |
| Suleman Lalani<br>442 Williams Landing Dr.<br>Sugarland, TX 77479 | $ 50,004.00 | 4.1670% |
| Class C Limited Partners: | | |
| Reserved in accordance<br>with Section 3.2 of<br>this Agreement. | $1,500,000.00 | 15.0000% |

EXHIBIT "B"

## CERTIFICATE OF LIMITED PARTNERSHIP FOR
## HARBOR HOSPICE OF BEAUMONT, L.P.
## A TEXAS LIMITED PARTNERSHIP

1. The name of the limited partnership is Harbor Hospice of Beaumont, L.P.

2. The address of the registered office of the partnership is 4010 College Street, Suite 100, Beaumont, Texas 77707 and the name and address of registered agent for the partnership is Triptesh Chaudhury, 4010 College Street, Suite 100, Beaumont, Texas 77707.

3. The address of the principal office of the partnership where the records are to be kept or made available under Section 1.07 of the Texas Revised Limited Partnership Act is Triptesh Chaudhury, 4010 College Street, Suite 100, Beaumont, Texas 77707.

4. The name, mailing and street address of the general partner are as follows:

> Harbor Hospice Managers, L.L.C.
> 4010 College Street, Suite 100
> Beaumont, Texas 77707

5. Other matters that the general partner has determined to include are: None.

The Manager of the general partner has signed this document under penalty of perjury and certifies that to the best of his knowledge and belief, the facts stated in this Certificate of Limited Partnership are true.

GENERAL PARTNER:

HARBOR HOSPICE MANAGERS, L.L.C.

By: _____
Triptesh Chaudhury, Manager

Defendants p. 48

DEF000387

EXHIBIT "C"

INITIALS GENERAL PARTNER

Changes to

| Name<br>& Address | Capital<br>& Date | Percentage<br>& Interest<br>GPI %<br>to total PI |
|---|---|---|

INITIALS LIMITED PARTNERS

Changes to

| Name<br>& Address | Capital<br>& Date | Percentage<br>& Interest<br>LPI %<br>to total PI |
|---|---|---|

Defendants p. 49

DEF000388